**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS WILLIAM SHAKESPEARE, ET AL.,

Plaintiffs,

v.

ANTHROPIC, PBC, ET AL.,

Defendants.

Case No. 5:26-cv-5931-PCP

**DEFENDANT ANTHROPIC PBC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Judge: Hon. P. Casey Pitts

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, November 19, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard before District Judge P. Casey Pitts at the San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendant Anthropic PBC will, and hereby does, move the Court to dismiss Plaintiffs' First Amended Complaint.

This Motion is brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:

1. The final judgment and release in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO (N.D. Cal.), bar the claims on the eight works identified in Exhibit 6 to Declaration of Andy LeGolvan ("LeGolvan Decl.").
2. The Plaintiffs asserting the 67 works identified in LeGolvan Decl., Ex. 1 lack standing, because the registrations for those works name other parties as the copyright claimants. Alternatively, the registered owners, co-owners, and other rightsholders identified in LeGolvan Decl., Exs. 1-3 are necessary parties under Fed. R. Civ. P. 19(a), and Plaintiffs must comply with Rule 19(c).
3. All claims are barred by the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b), and Plaintiffs fail to allege a viable theory for tolling or delayed accrual.
4. Count I (direct infringement) fails to state a claim to the extent it rests on the distribution right under 17 U.S.C. § 106(3).

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Andy LeGolvan and its exhibits filed herewith, the records, files, and pleadings in this case, and all other matters and evidence the Court deems proper.

Dated: September 18, 2026

WHITE & CASE LLP

By: /s/ Yar R. Chaikovsky

Yar R. Chaikovsky
Mark Davies
Andy LeGolvan
Amir Jabbari
*Attorneys for Defendant Anthropic PBC*

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION .... 1

II. FACTUAL BACKGROUND .... 2

III. LEGAL STANDARD .... 3

IV. ARGUMENT .... 4

A. The *Bartz* Final Judgment Bars the Claims on Eight Released Works. .... 4

B. Certain Plaintiffs Improperly Assert Third-Party Rights. .... 5

1. The Asserting Plaintiffs Lack Standing. .... 6

2. Alternatively, the Registered Owners Are Necessary Parties, and Plaintiffs Must Comply with Rule 19(c). .... 8

C. The Claims Are Time-Barred Under the Copyright Act's Three-Year Limitations Period. .... 10

1. Plaintiffs Have Not Adequately Alleged *American Pipe* Tolling. .... 11

2. Plaintiffs' Concealment Allegations Fail. .... 13

3. The Discovery Rule Does Not Save the Claims. .... 14

D. Plaintiffs Do Not Plausibly Allege Actual Dissemination, Volitional Distribution, or Distribution Beyond *De Minimis* Pieces of a Work. .... 15

V. CONCLUSION .... 20

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ....17

*Adams v. Wells Fargo Bank, N.A.*,
No. 13-cv-5164-YGR, 2015 WL 1434599 (N.D. Cal. Mar. 30, 2015) ....4

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ....11

*Annabooks, LLC v. Issuu, Inc.*,
No. 20-cv-04271-CRB, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020) ....16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....3, 19

*Atl. Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008) ....15, 17

*Bartz v. Anthropic PBC*,
No. 3:24-cv-05417-AMO (N.D. Cal. July 20, 2026), ....2, 4, 8, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....3

*Bickoff v. Wells Fargo Bank, N.A.*,
No. 11-cv-2452, 2012 WL 3637381 (S.D. Cal. Aug. 20, 2012) ....9

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
716 F. Supp. 3d 835 (C.D. Cal. 2024) ....18

*Cambronne v. Anthropic*,
No. 5:25-cv-10897-PCP (N.D. Cal. Sept. 3, 2026), ECF No. 225 ....10

*Ciero v. Walt Disney Co.*,
No. 17-cv-8544, 2018 WL 11352373 (C.D. Cal. May 21, 2018) ....10, 14

*Columbia Pictures Indus. v. Gary Fung*,
710 F.3d 1020 (9th Cir. 2013) ....19

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991) ....8

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) (Powell, J., concurring) ....11, 12

*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1426 (2025)....12, 13

*Donahue v. Union Pac. R.R. Co.*,
No. 21-cv-448-MMC, 2021 WL 2458351 (N.D. Cal. June 16, 2021)....12

*Eidson v. Medtronic, Inc.*,
981 F. Supp. 2d 868 (N.D. Cal. 2013)....15

*Forlenza v. AT&T*,
No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549 (C.D. Cal. Apr. 12, 2004)....19

*Fox Broad. Co. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2014)....18

*Hall v. YouTube, LLC*,
No. 24-cv-4071-WHO, 2025 WL 1482007 (N.D. Cal. May 5, 2025)....3, 6

*Hinton v. Pac. Enters.*,
5 F.3d 391 (9th Cir. 1993)....13

*In re Napster*,
No. 04-cv-3004-MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005)....14

*Johnson Controls, Inc. v. Phx. Control Sys.*,
886 F.2d 1173 (9th Cir. 1989)....6

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975)....11

*Lackey v. Sheppard*,
No. 22-cv-5653, 2022 WL 19241141 (C.D. Cal. Dec. 16, 2022)....6, 7

*Lynwood Invs. Cy Ltd. v. Konovalov*,
No. 20-cv-3778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021)....13

*Malibu Media LLC v. Doe*,
No. 13-cv-6312, 2016 U.S. Dist. LEXIS 14798 (N.D. Ill. Feb. 8, 2016)....19

*Michael Grecco Prods., Inc. v. BDG Media Inc.*,
No. 19-cv-4716, 2019 WL 13128605 (C.D. Cal. Nov. 21, 2019)....14

*Mosher v. Veyda*,
No. 22-cv-9632, 2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024)....7

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004)....18, 19

*O'Connor v. Boeing N. Am., Inc.*,
311 F.3d 1139 (9th Cir. 2002)....14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)....................15

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)....................18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................10, 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)....................4

*Rutledge v. Bos. Woven Hose & Rubber Co.*,
576 F.2d 248 (9th Cir. 1978)....................13

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)....................10

*Shropshire v. Canning*,
No. 10-cv-1941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011)....................8, 9, 10

*Spatola v. Desrouleaux*,
No. 23-cv-6191, 2026 WL 712576 (C.D. Cal. Mar. 5, 2026)....................10

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)....................4

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
39 F.4th 1236 (9th Cir. 2022)....................14

*Taylor v. Universal Music Corp., Inc.*,
No. 13-cv-6412, 2014 WL 12607685 (C.D. Cal. Mar. 10, 2014)....................9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................3, 4

*Trinh v. Wells Fargo & Co.*,
No. 16-cv-2985, 2017 WL 5548777 (S.D. Cal. Nov. 16, 2017)....................9

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)....................4

*Warner Chappell Music, Inc. v. Nealy*,
601 U.S. 366 (2024)....................14

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)....................7

*White v. Marshall*,
No. 07-cv-892, 2009 WL 230096 (E.D. Wis. Jan. 30, 2009)....................8

*Williams v. Aserraderos Arauco, SA*,
No. 12-cv-4912-WHO, 2015 WL 2228794 (N.D. Cal. May 12, 2015) .................................. 11

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) .................................................................................. 11, 12

*Willis v. Elec. Arts, Inc.*,
No. 08-cv-1311, 2009 WL 10710038 (D. Nev. Sept. 23, 2009) ............................................... 9

*Zakinov v. Blue Buffalo Pet Prods., Inc.*,
No. 17-cv-1301, 2018 WL 1426932 (S.D. Cal. Mar. 22, 2018) ................................................ 4

**FEDERAL STATUTES**

17 U.S.C. § 106(3) ................................................................................ 12, 15, 16, 20

17 U.S.C. § 410(c) ................................................................................................ 6

17 U.S.C. § 411(a) ................................................................................................ 6

17 U.S.C. § 501(b) ........................................................................................ 6, 8, 9

17 U.S.C. § 507(b) .............................................................................................. 10

**FEDERAL RULES**

Fed. R. Evid. 201(b)(2) ........................................................................................ 4

Fed. R. Civ P. 12 .................................................................................................. 7

Fed R. Civ P. 12(b)(6) ........................................................................................... 4

Fed R. Civ. P. 19 ........................................................................................ 5, 8, 10

Fed R. Civ. P. 19(a) ............................................................................................. 8

Fed R. Civ. P. 19(c) ............................................................................... 8, 9, 10, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Much of this case can be resolved now, on the face of the complaint and the public records it invokes.

Plaintiffs claim to have opted out of the *Bartz v. Anthropic* class settlement. But eight works at issue here are within the *Bartz* class and were not opted out, so the settlement's release and final judgment bars their claims.

For 67 works, the registrations on file with the Copyright Office name claimants who are not before the Court, leaving the asserting Plaintiffs without standing and the true owners unjoined. For another 27 works, the registrations name a co-owner who is not before the Court, and for 141 more works, they identify a publisher or other organization as the rights and permissions contact; the Copyright Act entitles those interest-holders to notice and an opportunity to join before their works are litigated without them.

The remaining claims have two core problems.

*First*, Plaintiffs' claims are untimely. The Copyright Act's three-year limitations period bars them, because every act the FAC challenges occurred in 2021 or 2022, and Plaintiffs did not sue until June 17, 2026. Plaintiffs' lone delayed-discovery allegation—a single conclusory sentence designed to speak for all 102 independent Plaintiffs—fails to meet their pleading burden. The same goes for Plaintiffs' conclusory concealment and class action tolling theories.

*Second*, Plaintiffs do not plausibly allege distribution. Count I asserts that when Anthropic downloaded books over the BitTorrent protocol, it also uploaded Plaintiffs' works "to the public writ large." FAC ¶ 215. Three defects independently defeat that theory. The FAC identifies no instance of anyone receiving a copy of any Plaintiff's work from Anthropic, which the Ninth Circuit's actual-dissemination requirement demands. It attributes any uploading to the BitTorrent protocol's automatic operation and to third-party users' download requests, not to any volitional act by Anthropic. And it alleges that Anthropic uploaded only "pieces" of the works—one fragment among the thousands a user needs to reassemble a file—with no allegations of substantiality or anything beyond mere *de minimis* use.

The Court should therefore dismiss the subset of claims on the *Bartz*-released and third-party-owned works, dismiss all claims as untimely, and dismiss all claims to the extent they rests on a distribution theory.

## II. FACTUAL BACKGROUND

**The *Bartz* settlement**. On July 20, 2026, the court in *Bartz v. Anthropic*, No. 3:24-cv-5417-AMO (N.D. Cal.), entered final judgment approving a class settlement and dismissing the released claims with prejudice. The certified class comprises owners of works on the settlement Works List contained in LibGen and PiLiMi, and the release covers Anthropic's downloading and copying of those works. *Bartz*, ECF No. 680. Eight works asserted here appear on the Works List and belong to Plaintiffs who, per the opt-out record, did not opt out. *See* LeGolvan Decl., Exs. 4-5, ¶¶ 7-8.

**The ownership allegations.** Plaintiffs allege they are the "author[s] and copyright owner[s]" of the asserted works and that they "registered" them. *E.g.*, FAC ¶¶ 22–23. The FAC says that each Plaintiff "owns a valid, registered copyright" in each work or "owns and controls the exclusive rights to each work through written agreement." *Id.* ¶ 260. The registrations on file with the Copyright Office tell a different story for many works. For 67 works, they name copyright claimants who are not plaintiffs in this case, including publishers and other entities. LeGolvan Decl., Ex. 1. For 27 works, they name a co-owner who is not before the Court. *Id.*, Ex. 2. And for 141 more works, they identify a publisher or other organization as the rights and permissions contact. *Id.*, Ex. 3. And no Plaintiff pleads a beneficial-ownership interest, such as a right to royalties, in any work.

**The timing allegations.** Plaintiffs allege Anthropic downloaded Books3 in January or February 2021, torrented LibGen in June 2021, and torrented PiLiMi in July 2022. FAC ¶¶ 179, 192, 209. Plaintiffs waited until June 17, 2026 to sue—over five years after Books3 and LibGen, and nearly four years after PiLiMi. To bridge that limitations period lapse, the FAC offers three undeveloped and conclusory theories. It alleges "each of the Plaintiffs" opted out of *Bartz* and that their claims were "tolled pending" its approval, without alleging how that theory reaches Plaintiffs' new legal theories that were not asserted in the *Bartz* complaint. *Id.* ¶¶ 234, 236. The FAC also alleges Anthropic took "steps to hide the full extent of its copyright theft," without saying what

those steps were. *Id.* ¶ 15. And it alleges, in one sentence covering 102 Plaintiffs and 875 works, that Plaintiffs "did not discover, and could not have reasonably discovered" their claims until November 24, 2025 or February 9, 2026, without saying who discovered what, or how. *Id.* ¶ 236.

**The distribution allegations.** Plaintiffs' distribution theory rests on the mechanics of the BitTorrent protocol. The FAC alleges that the protocol "break[s] files into pieces and distribute[s] the pieces between and amongst multiple users," that a file is "shared simultaneously with thousands of other users," and that uploading begins once another user requests a piece. FAC ¶¶ 187–89. A single paragraph addresses Anthropic. Pleaded "[u]pon information and belief," it alleges that the BitTorrent clients Anthropic used "were configured to, and did, upload pieces of the downloaded files . . . to other BitTorrent users during the download process," and that Anthropic "took no steps to disable, limit, or throttle that uploading." *Id.* ¶ 246. Plaintiffs describe that uploading as an "inherent[]," "simultaneous[]," and "necessary" function of the protocol. *Id.* ¶¶ 245–46. Across 875 works, the FAC names no recipient, no completed transfer, no upload beyond "pieces" (among thousands), no user who reassembled a work from a piece Anthropic supplied, and no volitional act by Anthropic to effect an upload.

## III. <u>LEGAL STANDARD</u>

A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although the Court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Documents that may be so considered include copyright registrations, *Hall v. YouTube, LLC*, No. 24-cv-4071-WHO, 2025 WL 1482007, at *2 (N.D. Cal. May 5, 2025) ("judicial notice of copyright registrations as public records"), as well as documents referred to in

the complaint or forming the basis of a claim. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As relevant here, the Court may consider the asserted copyright registrations, the *Bartz* settlement records, and the public sources cited in the FAC. *See* LeGolvan Decl., Exs. 1–5.

## IV. ARGUMENT

### A. The *Bartz* Final Judgment Bars the Claims on Eight Released Works.

Eight works asserted in this action were within the *Bartz* class and belong to Plaintiffs who did not opt out. LeGolvan Decl., Ex. 5. The *Bartz* release and final judgment bar those claims.

A judgment approving a class settlement binds every class member who did not opt out, and the release bars later claims resting on the "identical factual predicate as that underlying the claims" settled, even on a different legal theory. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). Where that bar appears from the complaint and judicially noticeable records, the Court may apply it on a Rule 12(b)(6) motion. *Tellabs*, 551 U.S. at 322; *Adams v. Wells Fargo Bank, N.A.*, No. 13-cv-5164-YGR, 2015 WL 1434599, at *2–3 (N.D. Cal. Mar. 30, 2015); *Zakinov v. Blue Buffalo Pet Prods., Inc.*, No. 17-cv-1301, 2018 WL 1426932, at *3–4 (S.D. Cal. Mar. 22, 2018) (taking notice over the plaintiff's objection).

Which registration numbers appear on the Works List, and which claimants submitted valid opt-outs, are administrative facts readily determined from those records. Fed. R. Evid. 201(b)(2). The FAC independently puts them at issue by alleging that the Works List is Anthropic's own compilation and that "each of the Plaintiffs" opted out. FAC ¶¶ 234, 242; *see U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs cannot invoke those records and resist what they show. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The *Bartz* judgment meets that standard as applied to Plaintiffs' claims. On July 20, 2026, the court entered final judgment approving the settlement and dismissing the released claims with prejudice. Final Judgment and Order Granting Final Approval of Class Action Settlement, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO (N.D. Cal. July 20, 2026), ECF No. 680. The settling class is defined by the Works List. Class Action Settlement Agreement § 1.7, *Bartz*, ECF No. 362-3 ("only legal and beneficial owners of works included on the Works List are in the Class"). And

the release reaches the conduct Plaintiffs challenge here:

> "Released Claims" means any and all claims or causes of action for any relief of any kind . . . arising from Defendant's alleged past torrenting (including uploading and seeding), scanning, retention, and use of works, including training, research, development, and production of AI models and associated products and services of works on the "Works List" as of the date of preliminary approval of the Settlement.

Class Action Settlement Agreement § 1.29, *Bartz*, ECF No. 362-3.[1] Plaintiffs' Count I alleges torrenting, uploading, and retention of the downloaded files in a library. FAC ¶¶ 215, 245. The release explicitly released those three things. Nor do Plaintiffs fall within the releases carve-outs. The release excepts claims "based on the output of AI models," which Plaintiffs disclaim, FAC ¶ 245; and conduct "that occurs or occurred after August 25, 2025," while the downloads here are alleged to have occurred in 2021 and 2022. *Id.* ¶¶ 179, 192, 209.

Each work in Exhibit 5 appears on the *Bartz* Works List by registration number (LeGolvan Decl., Ex. 4), and the settlement records show no opt-out for each work. LeGolvan Decl., ¶¶ 7-8. The FAC alleges that "each of the Plaintiffs named herein opted out," and it identifies the exceptions it accounts for: Esquivel and Castells, whom the *Bartz* court permitted to opt out late, and Chase, whose registered works were excluded from the Works List. FAC ¶ 234. It does not account for the eight works in Exhibit 6. The claims premised on those works should be dismissed.

**B. Certain Plaintiffs Improperly Assert Third-Party Rights.**

Certain plaintiffs' ownership allegations are contradicted by their own copyright registrations. The affected works are identified in LeGolvan Decl., Exs. 1-3. That discrepancy has two consequences. First, they lack standing to assert claims for copyright infringement to works they do not own. Their claims should be dismissed on these grounds alone. Second, even if they could plead a non-futile basis for standing in an amended complaint, the legal owners identified in the copyright registrations are necessary parties under Rule 19, who, at the very least, should be notified of this action and given an opportunity to join.

---

[1] The release includes Anthropic its "principals, employees, and representatives." Class Action Settlement Agreement § 1.3, Bartz, ECF No. 362-3.

**1. The Asserting Plaintiffs Lack Standing.**

Standing requires more than a bare assertion of ownership. A plaintiff must allege facts establishing that they are the "legal or beneficial owner" of the work in suit. 17 U.S.C. § 501(b); *Lackey v. Sheppard*, No. 22-cv-5653, 2022 WL 19241141, at *3 (C.D. Cal. Dec. 16, 2022) (dismissing infringement claim absent facts showing ownership). Registration is required before a plaintiff may file suit, 17 U.S.C. § 411(a), and "courts may take judicial notice of copyright registrations as public records." *Hall*, 2025 WL 1482007, at *2. Registration certificates constitute prima facie evidence of the facts stated therein, including ownership. 17 U.S.C. § 410(c); *Johnson Controls, Inc. v. Phx. Control Sys.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (same). Courts routinely look to registrations to test whether a complaint's ownership allegations hold up. *Lackey*, 2022 WL 19241141, at *3 (consulting registration regarding pleaded ownership claim).

Here, the registrations for 67 works list other parties—not Plaintiffs—as the copyright claimants. LeGolvan Decl., Ex. 1.[2] The affected Plaintiffs allege simply that each is the "author and copyright owner" of the works and that each "registered" them. *E.g.*, FAC ¶¶ 22–23. The FAC does not reconcile that discrepancy. Moreover, the FAC's catch-all—that each Plaintiff "owns a valid, registered copyright" in each work "or" each Plaintiff "owns and controls the exclusive rights to each work through written agreement," *id.* ¶ 260—does not close the gap. That single disjunctive sentence covering 875 works leaves unsaid, as to any work in Ex. 1, which branch of the disjunctive applies, what "written agreement" is claimed, who the parties to it were, and what right it conveyed. Elsewhere the FAC pleads written assignments with those particulars for other works, which shows that Plaintiffs could have pleaded them here and did not. *See* FAC ¶¶ 80–81 (assignment and exclusive-licensee allegations for Human Resource Development Press).

A conclusory assertion of ownership, without facts establishing an interest in the exclusive right asserted and without any explanation of the discrepancy with the registrations, does not

[2] Two works present a more basic problem: the registrations referenced in Exhibit A to the FAC cover different works. Exhibit A to the FAC asserts *The Autism Sourcebook* under Registration No. TX 4-000-690, which actually registers *Why should white guys have all the fun?*. And *Team workout* under Registration No. TX 7-146-114 actually registers *Teamwork: 20 Steps to Success*. *Compare* FAC, Ex. A, Entry 143, *with* LeGolvan Decl., Ex. 1, Entry 4; *Compare* FAC, Ex. A, Entry 811, *with* LeGolvan Decl., Ex. 1, Entry 56.

suffice. *Lackey*, 2022 WL 19241141, at *3 (dismissing complaint where plaintiff alleged conclusory ownership claim but copyright registration listed third party as "claimant"); *Mosher v. Veyda*, No. 22-cv-9632, 2024 WL 4932621, at *7 (S.D.N.Y. Dec. 2, 2024) ("As the attached certificate of registration states that [third party] is the claimant, it must have obtained all rights under the copyright"). Courts do not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and they affirm Rule 12 dismissals of copyright claims for lack of standing on exactly that basis. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139, 1145 (9th Cir. 2003) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (affirming Rule 12 dismissal where the plaintiff was neither legal nor beneficial owner notwithstanding his ownership allegations)).

Courts in this District resolve the question at the pleading stage. In *Viral DRM LLC v. Seven West Media Ltd.*, the plaintiff alleged it owned valid copyrights in the works, but the written agreement its complaint invoked showed it held no exclusive right; the court rejected the argument that standing "should be decided on a motion for summary judgment" and dismissed on the pleadings. 768 F. Supp. 3d 1025, 1029–31 (N.D. Cal. 2025). And in *Viral DRM LLC v. Navez*, where the complaint alleged exclusive-licensee status but the registration named another person as claimant, the court required proof of standing and dismissed: "[s]tatutory standing cannot be willed into existence." No. 3:23-cv-6598-JSC, 2025 WL 834498, at *2 (N.D. Cal. Mar. 17, 2025).

Nor have the affected Plaintiffs adequately alleged beneficial ownership. A beneficial owner is one who has parted with legal title in exchange for a continuing interest in the copyright, such as an author who transferred the copyright in return for royalties. *Warren*, 328 F.3d at 1144–45. No Plaintiff pleads that it parted with legal title to any work in exchange for a retained royalty or revenue interest. The FAC's single reference to royalties is an allegation of market harm from Anthropic's conduct, not of an interest retained under a transfer. FAC ¶ 252. Whatever arrangements exist between these Plaintiffs and the registered claimants, Plaintiffs elected not to plead them, and the Court cannot supply the missing facts.

**2. Alternatively, the Registered Owners Are Necessary Parties, and Plaintiffs Must Comply with Rule 19(c).**

Even if the Plaintiffs could allege non-futile bases for standing, the registered owners identified in the registrations are necessary parties under Rule 19(a). Therefore, if these claims proceed, the Court should order Plaintiffs to comply with Rule 19(c) by identifying the absent co-owners and "the reasons for not joining them" (Fed. R. Civ. P. 19(c)) as an initial step to providing notice and invitation to join this suit under 17 U.S.C. § 501(b).

The registered owners are necessary parties. A party is necessary if disposing of the action in the party's absence would "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1). The Copyright Act itself provides for notice to and joinder of "any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b). These absent parties meet this test for several reasons.

First, proceeding without the absent co-owners leaves Anthropic exposed to "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if they sue later in a separate action. *See Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *7 (N.D. Cal. Jan. 11, 2011) ("there is no bar to [absent co-owner] bringing its own copyright infringement claims against Defendant for the same conduct"); *White v. Marshall*, No. 07-cv-892, 2009 WL 230096, at *3 (E.D. Wis. Jan. 30, 2009) (requiring joinder of copyright co-claimant because defendants "may be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of her claimed interest"). This protects not only Anthropic's interest as the would-be defendant in a duplicative suit "but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (quoting Rule 19 advisory committee's note).

*Bartz* eliminated this same risk by joining all owners of the works into a single class, ensuring "only one recovery per work" and binding "both the legal and beneficial owners." *Bartz*, 791 F. Supp. 3d 1038, 1052–53 (N.D. Cal. 2025). Plaintiffs' decision to opt their works out of the *Bartz* settlement severed that protection—opting out all co-owners of the works—and Rule 19 and

17 U.S.C. § 501(b) supply the means to reassemble it.

Second, because the registered owners hold their rights of record, proceeding without them potentially prejudices their ownership and commercial rights. *See Shropshire*, 2011 WL 90136, at *7 (copyright co-owner and publisher is "necessary" party because of contractual licensing and revenue rights); *Taylor v. Universal Music Corp., Inc.*, No. 13-cv-6412, 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014) (joinder of copyright co-owner where "[r]esolution of th[e] [infringement] lawsuit could adversely affect [his] ownership rights"). Indeed, Plaintiffs' claims of ownership conflict with the absent parties' prima facie ownership, and they are required parties to resolve that conflict. *See Willis v. Elec. Arts, Inc.*, No. 08-cv-1311, 2009 WL 10710038, at *5 (D. Nev. Sept. 23, 2009) ("UNLV's ability to protect its copyright in the fight song will be impaired if [plaintiff's] infringement claim is adjudicated in UNLV's absence").

The same analysis reaches a second set of works. For 27 works, the registration names a Plaintiff alongside a co-owner who is not before the Court, including publishers such as Macmillan, Zondervan, and the University of California Press. LeGolvan Decl., Ex. 2. A publisher holding a recorded co-ownership interest is a necessary party for the same reason a sole registered owner is: it retains licensing and revenue rights in the very work at issue, and nothing prevents it from pursuing Anthropic separately over that work. *Shropshire*, 2011 WL 90136, at *7 (copyright co-owner and publisher is a "necessary" party because of contractual licensing and revenue rights).

Moreover, Plaintiffs were required to plead the identity of these interested parties and "the reasons for not joining" them. Fed. R. Civ. P. 19(c); *see Bickoff v. Wells Fargo Bank, N.A.*, No. 11-cv-2452, 2012 WL 3637381, at *3 (S.D. Cal. Aug. 20, 2012) ("Plaintiff neither named [third party] as a required party nor demonstrated why joinder would not be feasible, as required by Rule 19(c)."). Plaintiffs made no attempt at Rule 19(c) compliance. The Court should therefore order compliance with Rule 19(c). *Trinh v. Wells Fargo & Co.*, No. 16-cv-2985, 2017 WL 5548777, at *5 (S.D. Cal. Nov. 16, 2017) (ordering plaintiff to "amend the complaint to include the allegations required by Rule 19(c)"). This threshold step is necessary to accomplish the Copyright Act's goal of according proper notice and opportunity to join for these co-owners. 17 U.S.C. § 501(b).

Finally, other interested third parties appear to exist with rights to the asserted works, including publishers listed on the face of the copyright registrations. *See* LeGolvan Decl., Ex. 3 (listing 141 works). These interests raise the same questions of standing and joinder, and only Plaintiffs know the full circumstances of their interests. The Court should order Plaintiffs to address them as part of any Rule 19(c) compliance.[3]

**C. The Claims Are Time-Barred Under the Copyright Act's Three-Year Limitations Period.**

The FAC alleges the downloads and torrenting took place more than three years before Plaintiffs filed suit, rendering the claims time-barred. *See* 17 U.S.C. § 507(b) (three-year statute of limitations); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014) (a copyright claim "'accrue[s]' when an infringing act occurs").

Anthropic allegedly downloaded Books3 in January or February 2021, and torrented LibGen in June 2021 and PiLiMi in July 2022. FAC ¶¶ 179, 192, 209. Any torrenting-based upload occurred with the downloads in 2021 and 2022. Yet Plaintiffs did not file until June 17, 2026, nearly four years after the PiLiMi download and over five years after the Books3 download.

Where, like here, a claim is time-barred from the face of the complaint and the plaintiff has not adequately alleged facts supporting tolling or delayed accrual, the Court need not go further and the claim should be dismissed. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254–58 (9th Cir. 2013); *Ciero v. Walt Disney Co.*, No. 17-cv-8544, 2018 WL 11352373, at *4 (C.D. Cal. May 21, 2018) (dismissing complaint alleging infringement occurred

[3] As the Court advised in the related *Cambronne* cases, Anthropic will confer with Plaintiffs on this issue. *See* CMC Transcript at 21:13–22:7, *Cambronne v. Anthropic*, No. 5:25-cv-10897-PCP (N.D. Cal. Sept. 3, 2026), ECF No. 225 (advising counsel to discuss whether the parties can "reach agreement on a proposed way of handling this issue"). Unlike the *Cambronne* plaintiffs, Plaintiffs here may be pursuing only a pro-rated share of damages tied to their ownership interests. *See* FAC ¶ 274 ("the allocation of any award among co-owning Plaintiffs shall be determined by agreement of the co-owners"). If that concession applies to absent co-owners, and if the Court credits that limitation as binding, a disclaimer of any claim to the absent owners' share may resolve the Rule 19 issue without joinder. *See, e.g.*, *Spatola v. Desrouleaux*, No. 23-cv-6191, 2026 WL 712576, at *3–4 (C.D. Cal. Mar. 5, 2026) (plaintiff's disclaimer of the revenue share belonging to absent co-owners resolved a Rule 19 necessary-party dispute); *Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *7 (N.D. Cal. Jan. 11, 2011) (suggesting same). Thus, Plaintiffs should be ordered to clarify—through Rule 19(c) amendment or other vehicle—whether they are seeking only pro-rated damages or something broader implicating absent parties' rights.

over three years earlier). Because here the limitations expiration is "apparent on the face of the complaint," Plaintiffs had "the burden of alleging facts which would give rise to tolling." *Williams v. Aserraderos Arauco, SA*, No. 12-cv-4912-WHO, 2015 WL 2228794, at *2 (N.D. Cal. May 12, 2015) (quoting *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993)).

The FAC advances three theories, and each fails.

**1. Plaintiffs Have Not Adequately Alleged *American Pipe* Tolling.**

Plaintiffs allege their "claims were tolled pending the approval of the settlement of *Bartz*." FAC ¶ 236. The filing of a class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties" had the suit proceeded as a class action. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). Plaintiffs' reliance on *American Pipe* tolling fails.

*First*, there is no tolling for the distribution theory based on BitTorrent uploads, which was not asserted in the *Bartz* complaint. While tolling applies to "the same cause of action subsequently asserted," *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975), the rule "does not 'leave[] a plaintiff free to raise different or peripheral claims.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring)). The key inquiry is fair notice to the defendant: Claims "as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations." *Crown*, 462 U.S. at 355 (Powell, J., concurring).

Here, the *Bartz* case complained of reproduction of works to train LLMs, not distribution of works by BitTorrent uploads. *See Bartz*, No. 3:24-cv-05417, ECF No. 1 ¶ 71 ("reproducing the works ow[n]ed by Plaintiff and the proposed Class in datasets used to train their artificial intelligence models"). It asserted no distribution claim and it did not allege Anthropic uploaded anything to anyone—via BitTorrent or otherwise. A defendant reading that complaint would prepare to defend the copying of books used for training LLMs. It would have no reason to preserve evidence or marshal witnesses on the operation of a peer-to-peer client or what others on the peer-to-peer network may have done with the downloaded works. The consequence is straightforward.

The distribution theory accrued when the downloads occurred in 2021 and 2022, no suspension applied to it by the filing of the *Bartz* complaint focusing on reproduction for LLM training, and the three-year period closed in June 2024 for the LibGen download and July 2025 for PiLiMi. FAC ¶¶ 192, 209. Count I is untimely to the extent it rests on Section 106(3), for every work.[4]

Plaintiffs may argue that distribution and reproduction derive from the same statute. But this limitation applies even if the later plaintiff invokes the same statute and accuses similar underlying conduct—a new theory pushes the claim outside of *American Pipe* "fair notice" tolling. *See Donahue v. Union Pac. R.R. Co.*, No. 21-cv-448-MMC, 2021 WL 2458351, at *2 (N.D. Cal. June 16, 2021) (no tolling for failure-to-accommodate claim where class pleaded only disparate treatment and impact; despite shared statute, same defendant, and same company program, the class claim did not supply fair notice because the elements and facts required to prove them differed); *Williams*, 517 F.3d at 1136 (no tolling for compensation-discrimination claim where class pleaded promotion-discrimination, hostile work environment, and retaliation; despite shared statute, same defendant, and same employment relationship, the claims required "additional facts" and evidence to prove them).

*Second*, even if Plaintiffs could invoke tolling, the Books3 and LibGen claims expired before *Bartz* was filed on August 19, 2024, so no suspension could reach them. Tolling suspends a running limitations period; it does not revive an expired one. *Crown*, 462 U.S. at 347 (a later individual action is timely only if "instituted within the time that remains on the limitations period"). The Books3 claims accrued in January or February 2021 and closed three years later, roughly six months before *Bartz*. FAC ¶ 179. The LibGen claims accrued in June 2021 and closed

[4] Nor is there tolling for Plaintiffs' central-library theory, which Plaintiffs expressly plead as conduct outside the *Bartz* class definition. *American Pipe* tolling reaches only plaintiffs the class complaint "arguably include[d]," *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (citation modified), *cert. denied*, 145 S. Ct. 1426 (2025), and the *Bartz* class complaint and count were defined by works used in LLM training, *Bartz*, No. 3:24-cv-05417, ECF No. 70 ¶¶ 63, 75, while Plaintiffs here allege the central library served purposes "unrelated to the immediate training of an LLM," FAC ¶¶ 222–23 (central library "served a distinct purpose from AI training" including to "browse books, search metadata, and assess content for various internal purposes unrelated to the immediate training of an LLM"). Whether or not that allegation is accurate, it places the theory outside the class the *Bartz* complaint defined, so tolling does not reach it.

in June 2024, two months before *Bartz*. *Id*. ¶ 192. Nothing remained to suspend.[5]

**2. Plaintiffs' Concealment Allegations Fail.**

Although the FAC vaguely suggests Anthropic took "steps to hide the full extent of its copyright theft," these conclusory allegations do not support tolling. FAC ¶ 15. To the extent Plaintiffs offer that barebones sentence as a basis for tolling, it does not suffice. Fraudulent concealment requires "affirmative acts of concealment" by the defendant, (2) the plaintiff's lack of "actual or constructive knowledge of facts giving rise to [the] claim," and (3) the plaintiff's "diligence" in pursuing "the facts giving rise to the cause of action." *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-cv-3778-LHK, 2021 WL 1164838, at *10–11 (N.D. Cal. Mar. 25, 2021). Each element must be alleged with particularity. *Id*. at *10 (citing Fed. R. Civ. P. 9(b)); *Hinton*, 5 F.3d at 395 ("must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts").

Plaintiffs here plead none of the required elements. Plaintiffs allege no affirmative conduct, only that Anthropic took unspecified "steps," without explaining what they were or whether they succeeded. *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (plaintiffs "cannot rely upon conclusory [concealment allegations] to avoid the bar of limitations," nor can they rely on defendant's "[s]ilence or passive conduct"). Indeed, any notion of concealment is even inconsistent with Plaintiffs' own allegations. The FAC alleges that Anthropic publicly admitted using The Pile, that The Pile's publicly posted datasheet states that "Books3 is almost entirely comprised of copyrighted works," and that the creator of Books3 publicly described its pirated origins beginning in October 2020 and its intended use for building LLMs. FAC ¶¶ 164, 169–71, 175. A defendant who publicly discloses the very facts said to be hidden has committed

[5] Even if tolling applied, Plaintiffs' claim that tolling categorically extends through "approval of the settlement in *Bartz*" or "the deadline for opting out of the class action" (FAC ¶ 236) is inaccurate. Rather, each Plaintiff would have a different tolling period depending on when they became "unambiguously exclude[d]" from the class—whether by opt-out, denial of partial certification, or redefining of the class. *See DeFries*, 104 F.4th at 1099. For example, the *Bartz* court certified a class limited to LibGen and PiLiMi works, but denied certification for Books3. *Bartz*, 791 F. Supp. 3d 1038, 1065 (N.D. Cal. July 17, 2025). Any owner asserting a Books3 work was excluded on July 17, 2025, when that ruling issued, and any tolling for those works ended then. The same goes for works that were excluded by redefining the class based on the "Works List" on October 17, 2025. *Bartz*, 2025 WL 2961371, at *1 (N.D. Cal. Oct. 17, 2025) (preliminary approval of settlement; "only works included on the Works List are in the Class").

no affirmative act of concealment.

**3. The Discovery Rule Does Not Save the Claims.**

Plaintiffs invoke the discovery rule. While the Ninth Circuit applies it to copyright claims, *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1246 (9th Cir. 2022), the Supreme Court has twice declined to endorse that approach. *See Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024) (majority only "assume[d] without deciding" discovery rule applies to Copyright Act); *Petrella*, 572 U.S. at 670 n.4. And three Justices recently questioned whether the Copyright Act "has any room for such a rule," noting the Act contemplates accrual "when an infringing act occurs." *Nealy*, 601 U.S. at 375–76 (Gorsuch, J., dissenting). While Anthropic recognizes the Court is bound by Ninth Circuit precedent, Anthropic respectfully submits that the discovery rule should not apply to claims under the Copyright Act and preserves this issue for appellate review.

Even under the discovery rule, a plaintiff whose claims are otherwise untimely bears the burden of pleading facts that support delayed discovery. *See Michael Grecco Prods., Inc. v. BDG Media Inc.*, No. 19-cv-4716, 2019 WL 13128605, at *4 (C.D. Cal. Nov. 21, 2019) (burden on plaintiff to allege entitlement to discovery rule); *In re Napster*, No. 04-cv-3004-MHP, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005) (same); *Ciero*, 2018 WL 11352373, at *4 (same).

That burden is plaintiff-specific. "To satisfy this burden, the plaintiff must establish facts that show the plaintiff lacked knowledge and that in the exercise of reasonable diligence the facts could not have been discovered earlier." *Michael Grecco Prods., Inc.*, 2019 WL 13128605, at *4. What a plaintiff knew, and when, "is a matter peculiarly within the knowledge of the plaintiff," and a defendant "may not have a fair opportunity to controvert a plaintiff's invocation of the discovery rule unless the plaintiff identifies the facts that he or she claims put him or her on notice." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1157–58 (9th Cir. 2002). Without that requirement, "a plaintiff might be able to defeat a limitations defense by categorically denying knowledge of any facts that the defendant proposes put the plaintiff on notice." *Id.* at 1158.

Paragraph 236 is that categorical denial. It alleges, in conclusory fashion, that "Plaintiffs did not discover, and could not have reasonably discovered" their claims until November 24, 2025

or February 9, 2026, and stops there. Across 102 owners asserting 875 works, the FAC never identifies when any Plaintiff discovered the alleged infringement, how that Plaintiff discovered it, what that Plaintiff did to investigate, or why earlier discovery was not possible for that Plaintiff.

A fuller allegation has been held insufficient in this District. The plaintiffs in *Eidson v. Medtronic, Inc.* alleged a "diligent investigation," and the court dismissed their claims as time-barred, because the allegation "does not describe the manner of their discovery, nor does it provide a certain time at which they discovered" it, and because the claim of diligence was "merely conclusory" without "facts establishing what steps they actually took to investigate." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 893–94 (N.D. Cal. 2013). General assertions that facts "were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless." *Id.* at 893.

The face of the FAC shows every challenged act occurred in 2021 or 2022, and Plaintiffs plead no facts that suspend, delay, or excuse the three-year period as to any theory or any work. The Court should dismiss Count I as time-barred.

### D. Plaintiffs Do Not Plausibly Allege Actual Dissemination, Volitional Distribution, or Distribution Beyond *De Minimis* Pieces of a Work.

Plaintiffs do not plausibly allege Anthropic distributed their works. First, the FAC alleges no actual dissemination to a user, resting instead on a single conclusory paragraph describing BitTorrent generally rather than what happened to any of the 875 asserted works. Second, Plaintiffs do not allege volitional conduct by Anthropic; allegations attribute any uploading to the protocol's automatic operation and to third-party downloaders' independent acts. Third, Plaintiffs' own description of BitTorrent shows that any single upload conveyed, at most, one fragment among thousands needed to reassemble a work—a *de minimis* use that cannot sustain a distribution claim. Each ground independently defeats Count I's distribution theory.

First, the distribution right under 17 U.S.C. § 106(3) is violated only by "actual dissemination" of a copy to another person. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007); *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981, 986 (D. Ariz. 2008) (surveying Ninth Circuit precedent and holding that "[u]nless a copy of the work changes

hands in one of the designated ways [under § 106(3)], a 'distribution' under § 106(3) has not taken place" and "[m]erely making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution.").

Courts dismiss distribution claims that merely describe a system's general capacity to transmit files coupled with a conclusory allegation that transmission occurred. *See Annabooks, LLC v. Issuu, Inc.*, No. 20-cv-04271-CRB, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020) (dismissing distribution claim where the plaintiff alleged generally that the defendant's website "transmit[s] copies of infringing works from its servers to the computers of its users" but "makes no allegations regarding the transmission of this Work specifically," including failing to allege that "a single Issuu user ever downloaded or even viewed" the work).

The FAC suffers the same defect as *Annabooks*, at a far greater scale. It identifies no recipient, no completed transfer, and no circumstance of transmission for any of the 875 works at issue. Its sole factual predicate—pleaded "upon information and belief" and collectively for the entire five million LibGen and two million PiLiMi downloads—is that Defendants' "BitTorrent clients . . . were configured to, and did, upload pieces of the downloaded files . . . to other BitTorrent users during the download process." FAC ¶¶ 246, 192, 209. That allegation simply restates the FAC's general description of BitTorrent: the protocol "break[s] files into pieces and distribute[s] the pieces between and amongst multiple users," such that "a single file can be distributed" as every downloading peer also acts as a distributor to others. *Id.* ¶¶ 188–91. *Annabooks* foreclosed exactly this framing—merely describing what a system generally does and asserting, without more, that the same thing happened to the work at issue. The FAC's attempt to do so for 875 separately copyrighted works on a single conclusory paragraph fares no better.

Even crediting a specific transmission, the general BitTorrent mechanics pleaded would not establish distribution by Anthropic. Courts require factual detail about a file-sharing system's architecture before treating a shared-folder holder's conduct as direct distribution rather than reproduction accomplished by the recipient. In *Howell*, the recording companies' distribution claim failed because they "ha[d] not explained the architecture of the KaZaA file-sharing system in enough detail to determine" whether the shared-folder owner distributed a copy or merely

"provide[d] a third party with access and resources to make a copy on their own." 554 F. Supp. 2d at 986–87. Absent that showing, liability sounds only in contributory infringement of the reproduction right—with its own scienter elements—not direct infringement of the distribution right. *Id*. The FAC supplies no more architectural detail than *Howell* found wanting: it describes files as broken into pieces and exchanged among peers, but never identifies which party's computer initiates any given transfer or otherwise permits the Court to determine that Anthropic, rather than the requesting peers, effected the upload copying. FAC ¶¶ 188–91.

Nor can Plaintiffs escape this result by invoking the Ninth Circuit's brief statement in *Napster* that users "who upload file names to the search index for others to copy violate plaintiffs' distribution rights." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001). As *Howell* recognized, *Napster*'s "review of the issue was cursory" because "the court cited no precedent and offered no analysis"; the underlying direct infringement was uncontested on appeal, essentially admitted in the district court, and not actually litigated or subject to scrutiny. *Howell*, 554 F. Supp. 2d at 982.[6] *Perfect 10*'s later "actual dissemination" holding "casts doubt on the single unsupported line from *Napster*," 554 F. Supp. 2d at 982 (citing *Perfect 10*, 508 F.3d at 1162), and confined whatever force that line retains to cases where a defendant "own[s] a collection" of works and "communicate[s]" them to others—a predicate the FAC never pleads for any specific work or recipient. *Id*. Napster's undeveloped, unlitigated statement does not displace the showing *Annabooks*, *Howell*, and *Perfect 10* require.

Second, even if Plaintiffs could plausibly allege actual dissemination, the volitional-conduct requirement independently defeats the distribution theory. "[D]irect infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Annabooks*, 2020 WL 6873646, at *4 (dismissing where no allegation of distribution aside from "making

[6] *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013–14 (9th Cir. 2001) (noting that "direct infringement by Napster users is not presently appealed by Napster," requiring the court only to "briefly address the threshold requirements," and noting "it [was] pretty much acknowledged . . . by Napster [in the district court] that this is [direct] infringement"); 114 F. Supp. 2d 896, 911–12 (N.D. Cal. 2000) (finding direct infringement based on undisputed evidence that "virtually all Napster users engage in the unauthorized downloading or uploading of copyrighted music," without addressing distribution and reproduction separately or analyzing what conduct constitutes actual dissemination).

available a digital copy through automated processes"); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669-70 (9th Cir. 2017) (affirming dismissal because "distribution happen[ed] automatically" and the defendant did not play "any sort of active role" in causing it to occur.)

Anthropic does not contest in this motion that Plaintiffs sufficiently allege volitional conduct for the reproduction of LibGen and PiLiMi. *See* FAC ¶ 265 ("Each was a personal act of reproduction on a machine under Mann's control."). But Plaintiffs plead nothing comparable for their distribution theory. Rather, the opposite. The FAC attributes uploads to two forces outside Anthropic's control: First, the "inherent[]," "simultaneous[]," and "necessary" "function of the BitTorrent protocol." FAC ¶¶ 245, 246. Second, a third-party BitTorrent user's decision to request and download a file. *Id.* ¶ 188 ("Once a user downloads a piece of a file . . . ."). On Plaintiffs' own allegations, any upload occurred "automatically" and "at the user's command." *Perfect 10*, 847 F.3d at 669-70; *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014). No allegation identifies any work Anthropic selected for transmission or any recipient it chose; there are "no allegations that [Anthropic] . . . cull[ed] Plaintiff's copyrighted works for subsequent upload." *BMG Rts. Mgmt. (US) LLC v. Joyy Inc*., 716 F. Supp. 3d 835, 842 (C.D. Cal. 2024).

While these cases generally arise in the service-provider context, the volitional-conduct requirement rests on proximate causation rather than on any feature of the service-provider relationship. *Perfect 10*, 847 F.3d at 666. In a peer-to-peer network there is no intermediary host; the transfer function is built into the protocol and, as the FAC alleges, operates "inherently." FAC ¶¶ 187–91, 246. That difference goes to the mechanism of automation, not to causation, and thus does not change the application of the law where the copying is effected by an automated software protocol at a third party's request.

Third, even accepting Plaintiffs' allegations of actual dissemination and volitional conduct, their own description of the BitTorrent protocol confirms any uploading by Anthropic was of only "pieces" of their works, and nowhere do Plaintiffs allege upload of substantial portions of them.

An unauthorized use of a copyrighted work is actionable only if it is substantial, not *de minimis*. *Newton v. Diamond*, 388 F.3d 1189, 1192–93 (9th Cir. 2004). Courts measure substantiality by the quantitative and qualitative significance of the copied portion to the plaintiff's

work as a whole. *Id*. at 1195–96. A use is *de minimis*, and non-actionable, when it is "so meager and fragmentary that the average audience would not recognize the appropriation." *Id*. at 1193 (citation omitted). Courts resolve *de minimis* use on the pleadings where, as here, the plaintiff's own allegations establish the size and character of the taking. *See Forlenza v. AT&T*, No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549, at *6–11 (C.D. Cal. Apr. 12, 2004) (dismissing copyright claim on the pleadings where the complaint's own description of the alleged copying showed only a fragmentary use). The burden of pleading substantiality rests with Plaintiffs. *Id.*

Unlike Anthropic's alleged downloads—which the FAC plausibly alleges resulted in complete reassembled copies of the works, *see Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020, 1026 (9th Cir. 2013) (describing BitTorrent: "Once a user has downloaded all the pieces, the file is automatically reassembled into its original form.")—any simultaneous upload by Anthropic comprised only "pieces" of the works to other peer clients. This is confirmed expressly by Plaintiff's own allegations. *See* FAC ¶ 246 ("[T]he BitTorrent clients that Defendants used to download the LibGen and PiLiMi collections were configured to, and did, upload ***pieces*** of . . . Plaintiffs' works [] to other BitTorrent users during the download process[.]") (emphasis added); *id*. ¶ 245 ("they simultaneously uploaded ***pieces*** of those works to other users") (emphasis added). Plaintiffs further confirm that Anthropic's contribution of uploading "pieces" for any particular work comprise only one of as many as "thousands" of the other pieces required to allow a user to reassemble a completed work. *See id*. ¶ 187 ("protocols like BitTorrent break the files into pieces and distribute the pieces"); *id*. ¶ 189 ("Files on BitTorrent are shared simultaneously with thousands of other users . . . . [C]opying is no longer one-to-one but thousands-to-thousands.").

Plaintiffs' conclusory assertion that Anthropic's uploading of "pieces" was not "de minimis," FAC ¶ 246, cannot substitute for the missing facts to satisfy the substantiality burden. That sentence is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," which the Court need not accept as true. *Iqbal*, 556 U.S. at 678. Nowhere does the FAC allege any "piece" that Anthropic allegedly uploaded constitutes a "substantial" portion of the underlying work. *See Malibu Media LLC v. Doe*, No. 13-cv-6312, 2016 U.S. Dist. LEXIS 14798, at *21–24 (N.D. Ill. Feb. 8, 2016) (plaintiff failed to show that "pieces" of work

transmitted via BitTorrent were a "substantial" portion of the copyrighted work). Absent such facts, the Court cannot infer that any single upload was quantitatively or qualitatively significant to the work as a whole—only that it was, on Plaintiffs' own telling, one fragment among potentially thousands. That is the paradigm of a *de minimis* taking, and it cannot sustain a distribution claim.

## V. <u>CONCLUSION</u>

The Court should dismiss the claims on the eight works identified in LeGolvan Decl., Ex. 6, which the *Bartz* judgment and release bar. It should dismiss the claims on the 67 works identified in LeGolvan Decl., Ex. 1, because the asserting Plaintiffs lack standing. To the extent any claim on a work in LeGolvan Decl., Exs. 1-3 survives, the Court should order Plaintiffs to comply with Rule 19(c) by identifying the registered owners, co-owners, and other rightsholders and "the reasons for not joining them." The Court should dismiss all claims as time-barred. And it should dismiss all claims to the extent they allege a violation of the distribution right under 17 U.S.C. § 106(3).

Dated: September 18, 2026

WHITE & CASE LLP

By: *<u>/s/ Yar Chaikovsky</u>*
Yar Chaikovsky

Yar R. Chaikovsky
Mark Davies
Andy LeGolvan
Amir Jabbari

Attorneys for
Defendant Anthropic PBC