**JAMES H. BARTOLOMEI, III P.A.**
James H. Bartolomei III (SBN 301678)
Of Counsel at Duncan Firm, P.A.
Michael Manapol (SBN 258300)
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
james@duncanfirm.com
michael@manapollaw.com

**GAFNI & LEVIN, LLP**
Adam I. Gafni, Esq. (SBN 230045)
11811 San Vicente Blvd.
Los Angeles, California 90049
Telephone: (424) 744-8344
adam@gafnilaw.com

**DONIGER / BURROUGHS**
Stephen M. Doniger (SBN 179314)
Benjamin F. Tookey (SBN 330508)
Nelson A. Campbell (SBN 357579)
Andres Navarro (SBN 358499)
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
anavarro@donigerlawfirm.com
ncampbell@donigerlawfirm.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

THOMAS WILLIAM SHAKESPEARE, *et al.*,

*Plaintiffs*,

v.

ANTHROPIC PBC, a Delaware public benefit corporation; DARIO AMODEI, an individual, and BENJAMIN MANN, an individual,

*Defendants*.

Case No. 5:26-cv-5931-PCP
*Hon. P. Casey Pitts Presiding*

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Hearing Date: December 17, 2026
Time: 10:00 a.m.
Courtroom: 8, 4th Floor

**TABLE OF CONTENTS**

I. INTRODUCTION……1
II. SUMMARY OF RELEVANT FACTS AND ALLEGATIONS……1
A. The Parties and the Works at Issue……1
B. Defendants' Acquisition of Plaintiffs Works from Pirate Libraries……2
C. The *Bartz* Class Action and Settlement……3
D. Plaintiffs' Discovery of the Infringement and Their Opt-Outs……4
E. This Action and Defendants' Motion……5
III. LEGAL STANDARD……5
IV. ARGUMENT……6
A. The *Bartz* Final Judgment Does Not Bar Claims on the Eight Works……6
B. Plaintiffs' Allegations of Ownership Are Plausibly Pled……8
C. Plaintiffs Have Standing to Assert the Claims……8
D. Registration Certificates Cannot Defeat Well-Pled Ownership Allegations……10
E. Co-Authors and Rights and Permissions Designees are Not Necessary Parties Whose Absence Warranties Dismissal……12
1. Co-owners may sue without joining other co-owners……12
2. Rights and permissions designees are not necessarily owners, and their absence does not warrant dismissal……14
F. The Statute of Limitations Does Not Bar Plaintiffs' Claims……14
1. Plaintiffs' claims are timely under the discovery rule……15
2. The FAC adequately alleges class action tolling……17
G. Plaintiffs' Distribution Claim is Sufficiently Pled……21
1. The FAC plausibly alleges actual dissemination……22
2. The FAC plausibly alleges volitional conduct……23
3. Anthropic's *de minimis* argument assumes facts the FAC does not allege……24
V. CONCLUSION……25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ... 17

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ... 9

*Annabooks, LLC v. Issuu, Inc.*,
2020 WL 6873646 (N.D. Cal. Sept. 24, 2020) ... 22, 24

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 6, 22

*Atlantic Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008) ... 22

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ... 16

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 6

*Bloom v. Act, Inc.*,
No. CV 18-6749-GW(SSX), 2019 WL 13603899 (C.D. Cal. Nov. 18, 2019) ... 16

*BMG Rights Management (US) LLC v. Joyy Inc.*,
716 F. Supp. 3d 835 (C.D. Cal. 2024) ... 23

*Broberg v. The Guardian Life Ins. Co. of Am.*,
90 Cal. Rptr. 3d 225 (2009) ... 15

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ... 19, 21, 22, 23, 24

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .......... 17
*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) .......... 12
*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024) .......... 20, 21
*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 16
*Donahue v. Union Pacific Railroad Co.*,
2021 WL 2458351 (N.D. Cal. June 16, 2021) .......... 19
*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) .......... 10
*Fox Broadcasting Co. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2014) .......... 23
*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (2005) .......... 15, 16
*Hybrid Promotions, LLC v. Zaslavsky*,
2016 WL 10988656 (C.D. Cal. Oct. 5, 2016) .......... 8, 11, 14
*In re Napster, Inc. Copyright Litig.*,
191 F. Supp. 2d 1087 (N.D. Cal. 2002) .......... 11
*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
617 F.3d 1146 (9th Cir. 2010) .......... 11
*Kadrey v. Meta Platforms, Inc.* ,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) .......... 24
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 6
*King v. Najm*,
No. CV084164DSFVBKX, 2010 WL 11519552 (C.D. Cal. Apr. 19, 2010) .......... 13

*Malibu Media, LLC v. Doe*,
2016 WL 464045 (N.D. Ill. Feb. 8, 2016) .......... 24

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) .......... 8

*McNamara–Blad v. Ass'n of Prof'l Flight Attendants*,
275 F.3d 1165 (9th Cir. 2002) .......... 6

*Micro Focus (U.S.), Inc. v. Express Scripts, Inc.*,
No. CV PX-16-0971, 2019 WL 557080 (D. Md. Feb. 12, 2019) .......... 14

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015) .......... 9, 12

*Mosher v. Veyda*,
No. 22-CV-9632 (CS), 2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024) .......... 11

*New Form, Inc. v. Cozumel Films, LLC*,
No. CV 05-067 DT (AJWX), 2006 WL 8433989 (C.D. Cal. Mar. 15, 2006) .......... 13

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) .......... 24

*Patrick v. Poree*,
No. 23-12732, 2023 WL 8643538 (11th Cir. Dec. 14, 2023) .......... 14

*Payne v. Manilow*, No. CV183413PSGPLAX,
2018 WL 6321638 (C.D. Cal. Oct. 29, 2018) .......... 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 22

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) .......... 18

*Providence Publications, LLC v. Hub Int'l Ins. Servs., Inc.*,
No. 1:24-CV-00109-KES-BAM, 2024 WL 3361133 (E.D. Cal. July 8, 2024) .......... 16

*Rabin v. Google LLC*,
725 F. Supp. 3d 1028 (N.D. Cal. 2024) .................................................................. 15, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ............................................................................... 7, 18

*Robinson v. Binello*,
771 F. Supp. 3d 1114 (N.D. Cal. 2025) ...................................................................... 15

*Shropshire v. Canning*,
2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ........................................................... 13, 14

*Sino-US Inv. & Mgmt. Consultant Ltd. v. Rhee*,
No. CV-20-08597-AB-MRW, 2021 WL 5020469 (C.D. Cal. Mar. 9, 2021) ........................... 15

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .................................................................................... 22

*Spatola v. Desrouleaux*,
No. CV 23-06191-MWF(EX), 2026 WL 712576 (C.D. Cal. Mar. 5, 2026) ............................ 14

*Star Fabrics Inc. v. Norm Thompson Outfitters, LLC*,
No. CV 19-2765 PSG (SSX), 2019 WL 6894528 (C.D. Cal. July 10, 2019) ............................ 8

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
39 F.4th 1236 (9th Cir. 2022) ........................................................................... 15, 18

*Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*,
39 F.4th 1236 (9th Cir. 2022) .................................................................................. 16

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ................................................. 10

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) .................................................................................... 17

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ......................................................................... 9, 10, 12

*Tosti v. City of Los Angeles*,
754 F.2d 1485 (9th Cir. 1985) ............................................................................ 17, 19

*VHT, Inc. v. Zillow Group, Inc.*,
918 F.3d 723 (9th Cir. 2019) ........ 23

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ........ 10, 11

*Warren v. John Wiley & Sons, Inc.*,
952 F. Supp. 2d 610 (S.D.N.Y. 2013) ........ 8

*White v. Marshall*, No. 07-CV-,
892, 2009 WL 230096 (E.D. Wis. Jan. 30, 2009) ........ 13

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) ........ 19

*Willis v. Elec. Arts, Inc.*,
No. 208CV01311KJDLRL, 2009 WL 10710038 (D. Nev. Sept. 23, 2009) ........ 13

*Wolf v. Travolta*,
No. 2:14-CV-938-CAS VBKX, 2014 WL 6685560 (C.D. Cal. Nov. 24, 2014) ........ 15

**Statutes**

17 U.S.C. § 101 ........ 9
17 U.S.C. § 106 ........ 3, 9, 18
17 U.S.C. § 106(1) ........ 5
17 U.S.C. § 106(3) ........ 1, 20, 5
17 U.S.C. § 201(d)(1) ........ 9
17 U.S.C. § 201(d)(2) ........ 9, 12
17 U.S.C. § 501 ........ 5
17 U.S.C. § 501(b) ........ 9, 11
17 U.S.C. § 507(b) ........ 15

///

///

**Rules**

Fed. R. Civ. P. 8 ........ 8
Fed. R. Civ. P. 8(a)(2) ........ 5
Fed. R. Civ. P. 12(b)(6) ........ 8
Fed. R. Civ. P. 20(a)(1) ........ 2
Fed. R. Evid. 201(b) ........ 6

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1237 (3d ed. 2018).... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Anthropic PBC, Dario Amodei, and Benjamin Mann ("Defendants") seek dismissal on four grounds: (1) claims for eight works allegedly were released under the *Bartz v. Anthropic* class settlement; (2) claims for 67 works purportedly lack of standing (premised on ownership challenges) and/or claims for 168 works are allegedly missing indispensable parties; (3) the statute of limitations bars all claims; and (4) an alleged failure to plausibly state a claim for infringement of the 17 U.S.C. § 106(3) right to distribute. None warrants dismissal. Rather, Defendants' motion repeatedly misstates governing law, recasts disputed, factual issues as pleading defects, and ignores the specific allegations in the First Amended Complaint ("FAC") that establish Plaintiffs' standing and Defendants' unauthorized distribution in 2021 and 2022 of Plaintiffs' copyrighted works through the BitTorrent protocol.

First, Defendants argument that eight works at issue are barred by the settlement and final judgment entered in *Bartz* is factually inaccurate, as evidenced by the declarations filed in support of this Opposition. Second, Defendants' standing and failure to join indispensable parties arguments are both factually inaccurate and legally unsupportable. Third, Plaintiffs' well-pled allegations regarding the discovery of Defendants' massive piracy and the *Bartz* class action's tolling effect and court rulings foreclose any argument that the claims are time-barred as a matter of law. And finally, Defendants ignore or misapply applicable Ninth Circuit authority regarding distribution claims based on torrenting and allegations regarding the operation of the BitTorrent protocol Defendants recently admitted to using to illegally acquire Plaintiffs' works Accordingly, Defendants' Motion to Dismiss should be denied in full.

## II. SUMMARY OF RELEVANT FACTS AND ALLEGATIONS

### A. The Parties and the Works at Issue

Plaintiffs are 102 authors, co-authors, estates, loan-out companies, and publishers who allege that they hold exclusive copyright interests in the 875 literary works catalogued in Exhibit A to the FAC. FAC ¶¶ 2, 6, 21, 232 & Ex. A; Dkt. 48 at 1, 3. For each Plaintiff, the FAC identifies the works at issue and the basis of each Plaintiff's ownership, and alleges that each work was timely

registered prior to Defendants' infringement. FAC ¶¶ 22–143. Most Plaintiffs specifically allege that they are the author and copyright owner of their works, *e.g.*, *id.* ¶ 22. Others specifically allege that they own their works jointly with a co-author, *e.g.*, *id.* ¶¶ 29–30, 54–57; that they hold the copyright or relevant exclusive rights by written assignment, *e.g.*, *id.* ¶¶ 43, 59, 79–81, 87–88, 104; or that the work is owned by the author's wholly owned company, *e.g.*, *id.* ¶¶ 27, 37, 44.

As Defendants note, there are 67 works at issue (with three works withdrawn in FN 1) for which the copyright registration does not name a Plaintiff. While this fact is ultimately irrelevant, given the infinite divisibility of copyright, the concurrently filed declarations establish the basis for finding ownership and standing. *See* Declarations of Isabelle Gallo ("Gallo Decl.") ¶ 3; Rebecca Zanetti ("Zanetti Decl.") ¶ 3; Lynnette Khalfani-Cox ("Khalfani-Cox Decl.") ¶¶ 3–4; Karen Siff-Exkorn ("Siff-Exkorn Decl.") ¶ 3 (registration number corrected to TX0006250760); Jesse Stay ("Stay Decl.") ¶ 3; Wahida Clark ("Clark Decl.") ¶ 3; Matthew Chase ("Chase Decl.") ¶¶ 2–3; Glen Merzer ("Merzer Decl.") ¶¶ 2–3; Reyna Gobel ("Gobel Decl.") ¶¶ 2–3; Suzanne Cope ("Cope Decl.") ¶¶ 2–3; Bates Decl. ¶¶ 2–3; Carkhuff Decl. ¶¶ 2–5 and Lerner Decl. ¶¶ 2–3.

These declarations are consistent with Count I, which alleges that "[e]ach Plaintiff owns a valid, registered copyright in the work(s) identified in this Complaint . . . or owns and controls the exclusive rights to each work through written agreement." *Id.* ¶ 260. Plaintiffs sue as joined individual plaintiffs under Fed. R. Civ. Pro. 20(a)(1) permissive joinder of parties, not as a class. *Id.* ¶ 256. Defendant Anthropic PBC built and operates "Claude," a large language model. *Id.* ¶¶ 14, 144–146. Defendant Dario Amodei is its co-founder and Chief Executive Officer. *Id.* Defendant Benjamin Mann is a co-founder and member of its technical staff. *Id.*

**B. Defendants' Acquisition of Plaintiffs' Works from Pirate Libraries**

The FAC alleges three acquisitions of pirated books which included Plaintiffs' works. From the record developed in *Bartz v. Anthropic*, Plaintiffs learned that in or around January or February 2021, Mann personally directed or performed the download by HTTP of "Books3." FAC ¶ 179. That dataset was assembled from the pirate site Bibliotik, and Bibliotik's creator and datasheet publicly acknowledged it was "almost entirely comprised of copyrighted works." FAC ¶¶ 164–183, 245(a). In June 2021, after discussing with Amodei and other senior leadership whether to do so,

and with their express approval and direction, Mann used the BitTorrent protocol to download at least five million pirated books from Library Genesis ("LibGen"), a site Anthropic's own Archive Team had admitted was a "blatant violation of copyright." *Id.* ¶¶ 185, 192–206. In July 2022, with Amodei's and Mann's express authorization and direction, Anthropic torrented at least two million more pirated books from Pirate Library Mirror ("PiLiMi"). *Id.* ¶¶ 207–212. The bibliographic metadata Anthropic acquired with each collection identifies hundreds of Plaintiffs' works among the more than seven million books it took. *Id.* ¶¶ 213–214, 233.

BitTorrent is a peer-to-peer protocol that breaks files into pieces and exchanges the pieces among the participating computers ("peers") so that a peer that has downloaded a piece becomes a source of that piece for others in the "swarm." FAC ¶¶ 185–191. The FAC alleges that the BitTorrent clients Defendants used "were configured to, and did, upload pieces of the downloaded files — including pieces of Plaintiffs' works — to other BitTorrent users during the download process," that "Defendants took no steps to disable, limit, or throttle that uploading," and that "[d]istribution of unauthorized copies to others was a known, necessary, and accepted feature of the piracy method that Defendants deliberately chose in lieu of lawful acquisition." *Id.* ¶ 246; *see also id.* ¶¶ 7, 215, 238, 245(c). Anthropic then stored the pirated copies in its "central library" intended as a "permanent, general-purpose resource," under a policy to "store everything forever," and retained the books for "potential future uses, research, or general reference" whether or not a book was ever used to train a model. *Id.* ¶¶ 9–10, 216–228, 239–240. Anthropic never paid for the works. *Id.* ¶¶ 15, 219. The acts of infringement "are documented in Anthropic's own internal records and in sworn testimony made public in *Bartz*." *Id.* ¶ 245.

### C. The *Bartz* Class Action and Settlement

On August 19, 2024, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.), was filed on behalf of "[a]ll natural persons, estates, or literary trusts that are legal or beneficial owners of copyrighted works that: (a) are registered with the United States Copyright Office; (b) were or are used by Defendant in LLM training, research, or development; and (c) are books." *Bartz*, Dkt. 1 ¶ 59, RJN, Ex. 1. The complaint alleged that the class held "the exclusive rights, including the rights of reproduction and distribution," under § 106, and that Anthropic infringed those rights "by,

among other things, reproducing the works." *Id.* ¶¶ 70–71. The amended class complaint, filed December 4, 2024, added loan-out companies to the class and repeated those allegations. *Bartz*, Dkt. 70 ¶¶ 63, 74–75, RJN, Ex. 2.

The parties settled in August of 2025, and the *Bartz* court preliminarily approved the settlement on September 25, 2025. Then, its October 17, 2025 memorandum opinion limited the class to works on a settlement "Works List": "only works included on the Works List are in the Class." *Bartz*, Dkt. 437 at 2, RJN, Ex. 5; Dkt. 680 at 9, RJN, Ex. 8.

The settlement releases claims arising from "Defendant's alleged past torrenting" of listed works, *Bartz*, Dkt. 619 at 2, RJN, Ex. 6 (quoting Settlement Agreement § 1.29), and the motion for final approval reported that the parties had deposed "the individuals who torrented the relevant datasets" and exchanged expert topics including "torrenting, seeding, and leeching," *id.* at 3–4.

The final opt-out deadline was February 9, 2026. *Bartz*, Dkt. 680 at 13, RJN, Ex. 8. On July 20, 2026, the court granted final approval and entered judgment. *Id.* at 1, 23. The order confirms that works not on the Works List, "even if they otherwise meet or appear to meet the other class criteria," are outside the class and those claims "are preserved and unaffected by the Settlement." *Id.* at 9–10. The Court also allowed the late opt-outs of Plaintiffs Jordi Castells (submitted February 16, 2026) and Laura Esquivel (submitted March 30, 2026), each of whom learned of the settlement only after the opt-out deadline. *Id.* at 13–14, 22.

**D. Plaintiffs' Discovery of the Infringement and Their Opt-Outs**

The FAC alleges that Plaintiffs "did not discover, and could not have reasonably discovered, that their specific works were included in Anthropic's private, internal database until November 24, 2025, when the direct notice to class members was completed," that their claims were tolled during *Bartz*, and that "only Defendants control and possess the evidence of which works they copied and distributed." FAC ¶ 236; *see also id.* ¶ 15. Each Plaintiff other than Matthew Chase — who had registered works which were excluded from the Works List and which were not in the settlement class — opted those works out of the settlement, including Esquivel and Castells. *Id.* ¶ 234.

The declarations submitted by the two Plaintiffs, who opted out certain works establish the

following: Plaintiff Susan Bliler opted out three titles—*A Lion's Pride*, *Skin Walkers: Leto*, and *Tyce (Skin Walkers 15)*—by written request to the settlement administrator, JND Legal Administration ("JND"), sent January 23, 2026; JND confirmed receipt by email on January 29, 2026. *See* Declaration of Susan Bliler ("Bliler Decl.") ¶¶ 3–4. When JND's September 4, 2026 claim summary nonetheless still listed the three titles, Ms. Bliler tried to reach JND and received no response; she did not release those claims and will not accept *Bartz* settlement money for those titles. *Id.* ¶¶ 5–8. Plaintiff Human Resource Development Press, Inc. ("HRD Press") opted out *The Emotional Intelligence Activity Book* by a bulk opt-out form submitted to JND. *See* Declaration of Greg Carkhuff ("Carkhuff Decl.") ¶ 7. For four other HRD Press titles, HRD Press is the registered copyright claimant but not the author or publisher, and the *Bartz* settlement Works List website lookup tool was not searchable by copyright claimant; therefore, HRD Press could not identify those four titles during the opt-out period; and disputes that it released claims for those works. *Id.* ¶¶ 8–11.

**E. This Action and Defendants' Motion**

Plaintiffs filed this action on June 17, 2026, Dkt. 1, and the FAC on August 17, 2026, Dkt. 37. Count I alleges direct infringement of Plaintiffs' rights of reproduction and distribution, 17 U.S.C. §§ 106(1), (3), 501, by each Defendant. FAC ¶¶ 257–268.

Anthropic moved to dismiss on September 18, 2026, Dkt. 48, and Amodei and Mann joined. Dkts. 49, 50. The motion relies on a single declaration of Anthropic's counsel attaching copies of copyright registration records and *Bartz* settlement-website search results. Dkt. 48-1 ("LeGolvan Decl."). As set forth below, its arguments fail.[1]

## III. LEGAL STANDARD

A properly-pled complaint needs only assert a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). That is, it need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

[1] Notwithstanding Plaintiffs' arguments herein, Plaintiff Bert Bates withdraws his claims for the title *OCA/OCP JAVA SE 7 PROGRAMMER I & II STUDY GUIDE (EXAMS IZ0-803 & IZ0-804)* (TX 8-061-409); Plaintiff Gene Stone withdraws his claims for the title *The How Not To Die Cookbook* (TX 8-587-168), and Plaintiff Barron Lerner withdraws his claims for the title *The Breast Cancer Wars* (TX 5-399-978).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under Rule 12(b)(6), the movant must show either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To defeat a Rule 12(b)(6) motion, a pleading need only provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *Ashcroft*, 556 U.S. 678 (a pleading passes muster when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). The Court takes factual allegations as true and construes them in favor of the nonmovant. *See McNamara–Blad v. Ass'n of Prof'l Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002).

## IV. <u>ARGUMENT</u>

### A. The *Bartz* Final Judgment Does Not Bar Claims on the Eight Works

A class-settlement release is an affirmative defense, and "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). The FAC alleges that every Plaintiff, other than Matthew Chase (whose works were never on the Works List), opted his or her works out of the *Bartz* settlement. FAC ¶ 234.

A court may notice the existence and contents of filings in another case, but it "cannot take judicial notice of disputed facts contained in such public records," and it may not use noticed or incorporated documents to "dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1003 (9th Cir. 2018). Despite the foregoing, Anthropic asks the Court to disregard Plaintiffs' allegations in the FAC and instead conclusively rely on the accuracy of a list of *Bartz* opt-out requests Anthropic's counsel obtained from the settlement administrator, JND, "by email on March 26, 2026." LeGolvan Decl. ¶¶ 7–8. That list is a record the court used to approve the *Bartz* settlement, but whether a Plaintiff submitted a valid opt-out is a fact "subject to reasonable dispute." Fed. R. Evid. 201(b). *Ritchie* and *Sprewell* (Dkt. 48 at 4) do not support Anthropic's argument that the opt-out list and list of books released by the *Bartz*

settlement are not subject to dispute.

But Plaintiffs' declarations establish factual disputes that cannot be resolved at the pleadings stage. The *Bartz* settlement administration permitted class members to opt out specific works, and the administrator's stated practice was to contact any class member whose request lacked required information. *Bartz*, Dkt. 619-3 (Keough Decl.) ¶¶ 101–102, RJN, Ex. 7. Plaintiff Bliler submitted a written request to JND on January 23, 2026 — seventeen days before the deadline — identifying all necessary information for the three works at issue, referencing her claim number, and stating that she was opting those works out while leaving her other works in the settlement. Bliler Decl. ¶ 3. JND confirmed receipt on January 29, 2026, and never requested additional information. *Id.* ¶ 4. When its September 2026 claim summary nonetheless still listed the three works, Ms. Bliler attempted to reach JND and received no response. *Id.* ¶¶ 5–7. Bliler timely opted out and JND failed to process her request; at a minimum, the validity of her opt-out for these three titles is a disputed fact.

Plaintiff HRD Press likewise attests that it opted out *The Emotional Intelligence Activity Book* by a bulk form submitted to JND, Carkhuff Decl. ¶ 7, and that for the remaining four titles Anthropic challenges, HRD Press is the registered claimant but not the author or publisher of record. Again, the settlement website's lookup tool—the only means the settlement administration offered for identifying one's works—could not be searched by copyright claimant (notwithstanding Anthropic's separate argument in its Motion), and HRD Press never affirmatively released those claims. *Id.* ¶¶ 8–11. Whether a class member was unable to identify its works through the administrator's search tool faces release of its claims as to those works turns on facts outside the pleadings. Indeed, this may be a question for the *Bartz* court, which "reserve[d] jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement," *Bartz*, Dkt. 680 at 23, RJN, Ex. 8. And the *Bartz* court has allowed late opt-outs on a showing of excusable neglect. *Id.* at 13–14. HRD Press seeks leave for relief on those four titles.

Anthropic's authorities in its Motion assume an undisputed record that the plaintiff was a class member who failed to opt out and lacked good cause. *See Reyn's Pasta Bella*, 442 F.3d at 745–46 (plaintiffs "were Wal-Mart class members" who, "[r]ather than opt out," appeared through

counsel at the fairness hearing, where the settling court had "expressly determined" that their claims were released). The FAC and supporting declarations allege the opposite. The Motion should thus be denied as to the eight works; alternatively, any dismissal should be without prejudice and provide Bliler and HRD Press the opportunity to seek relief from the *Bartz* court, if necessary.

**B. Plaintiffs' Allegations of Ownership Are Plausibly Pled**

To sufficiently plead ownership, a plaintiff need only "plausibly allege it owns a valid copyright registration for its work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019). At the pleading stage, Courts consistently hold that a plain statement of ownership suffices, and that "a detailed pleading concerning how the plaintiff acquired ownership is not necessary." *Star Fabrics Inc. v. Norm Thompson Outfitters, LLC*, No. CV 19-2765 PSG (SSX), 2019 WL 6894528, at *2 (C.D. Cal. July 10, 2019) (citing *Hybrid Promotions, LLC v. Zaslavsky*, 2016 WL 10988656, at *8-9 (C.D. Cal. Oct. 5, 2016) (collecting cases)); *accord* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1237 (3d ed. 2018) ("Complaints simply alleging present ownership by the plaintiff, registration in compliance with the applicable statute, and infringement by the defendant, have been held sufficient under the rules.") Indeed, the "mere allegation of ownership is sufficient to defeat a motion to dismiss under FRCP 12(b)(6)." *Hybrid Promotions,* 2016 WL 10988656, at *8 (collecting cases). "To require a plaintiff to do more, at the motion to dismiss stage, would be to subject copyright plaintiffs to a heightened level of pleading, something this Court has been strictly proscribed from doing." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013).

The FAC does exactly that. For each Plaintiff, the FAC specifically states that each Plaintiff is the relevant copyright owner of specific work(s). *See* FAC ¶¶ 22-143 and Ex. A. That short, plain statement is all that Rule 8 requires. Yet the FAC goes even further, alleging how certain rights were transferred to Plaintiffs in certain works. *Id.* At the pleading stage, these allegations must be accepted as true and suffice to allege ownership.

**C. Plaintiffs Have Standing to Assert the Claims**

Because Plaintiffs allege that they are copyright owners of the exclusive rights at issue, Plaintiffs properly plead ownership and standing. Defendants' contrary arguments appear to

misapprehend basic principles of copyright divisibility and standing.

"The Copyright Act encourages creativity by granting to the author of an original work 'a bundle of exclusive rights . . . [which] includes the rights to reproduce the copyrighted work, to prepare derivative works, and, in the case of pictorial or graphic works, to display the copyrighted work publicly." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526 (2023) (citations omitted); 17 U.S.C. § 106. The Copyright Act permits a copyright owner to transfer "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the[se] rights," to someone else. 17 U.S.C. § 201(d)(2). For example, "an author of a novel might convey the exclusive right to publish a hardcover edition of the novel to one person and the right to create a movie based upon the novel to another." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) (citations omitted).

Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to someone else. 17 U.S.C. § 201(d)(1). The owner can transfer a right, or a share of such a right, via "an assignment, . . . exclusive license, or any other conveyance, . . . whether or not it is limited in time or place of effect." 17 U.S.C. § 101. "That is, either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for purposes of the Act." *Minden Pictures, Inc.*, 795 F.3d at 1003 (citations omitted, emphasis in original).

The Act further provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right[.]" 17 U.S.C. § 501(b). In that regard, it is irrelevant whether anyone else holds *other* exclusive rights in the work at issue. "[A]ny party to whom such a right has been transferred — whether via an assignment or an exclusive license — has standing to bring an infringement action based on that right." *Minden Pictures, Inc.*, 795 F.3d at 1003 (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008)).

This is a result of "the divisibility principle embodied by the 1976 Act." *Id*. at 1004. For

example, "a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right," because "the word 'exclusive' in [the Act] cannot mean that only sole owners possess 'exclusive' rights." *Id*. (citation omitted).

In that regard, it is irrelevant whether another person holds *other* exclusive rights in a work. An original copyright holder has standing to bring an infringement action for violation of the rights retained regardless of how many other rights in the bundle it has transferred to others. It is the recipient of the exclusive right that has standing to pursue infringement claims regarding that right.

At the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). And as discussed above, mere allegations of copyright ownership suffice.

Here, Plaintiffs allege that they are such owners and thus have standing to bring the instant claims. *See* FAC ¶¶ 21-143; Ex. A. This short, plain statement is all that is required.[2] This motion is therefore properly denied.

**D. Registration Certificates Cannot Defeat Well-Pled Ownership Allegations**

The above discussion of the divisibility principles of copyright law should make clear that a registration certificate—which may be applied for and obtained by anyone holding a copyright interest in the work—does not speak to ownership of any specific right in the "bundle" and cannot be dispositive of ownership or standing in any particular case.

"[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights" and "an owner's rights exist apart from registration" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). This is especially so given that a copyright owner may register a work and then convey exclusive rights to others that might not be referenced in the registration. Or, conversely, an exclusive licensee may register the work with the Copyright Office while the original author retains other copyright interests. Accordingly, a registration naming a claimant different from the plaintiff does

[2] The mere fact that a third party is listed on the copyright registration for a work does not disprove a plaintiff's allegation. *See* Section IV(D), (E), *infra*.

not disprove plaintiff's ownership. *See Payne v. Manilow*, No. CV183413PSGPLAX, 2018 WL 6321638, at *5 (C.D. Cal. Oct. 29, 2018) ("the fact that the registrations recorded at the Copyright Office do not list [plaintiff] as a claimant is not definitive evidence that this allegation is false.").

*Hybrid Promotions, LLC v. Zaslavsky* is squarely on point. There, a defendant sought judicial notice of a registration certificate that listed a third party as the "Copyright Claimant," and argued that the discrepancy disproved plaintiff's ownership claim. 2016 WL 10988656, at *7-9 (C.D. Cal. Oct. 5, 2016). The court rejected this defense, finding that registration only creates a rebuttable presumption of ownership and "does not definitively resolve the ownership issue." *Id*. at *9 (quoting *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1096 (N.D. Cal. 2002).

The same is true here. *See* FAC ¶¶ 21-143; Ex. A. As in *Hybrid Promotions*, statements on registration certificates cannot overcome Plaintiffs' ownership allegations at this stage. The registrations, at best, create a potential fact dispute. Defendants' reliance on *Mosher* is thus misplaced. There, the plaintiff failed to provide "facts plausibly suggesting that he, as opposed to [claimant on the copyright registration], is a party with the right to sue for infringement." *Mosher v. Veyda*, No. 22-CV-9632 (CS), 2024 WL 4932621, at *7 (S.D.N.Y. Dec. 2, 2024), *appeal dismissed* (Jan. 21, 2026). Not so here.

Defendants' reliance on *Warren v. Fox Fam. Worldwide, Inc.* is similarly misplaced. There, the plaintiff lacked standing to pursue an infringement claim because the works were made for hire and Warren did not retain legal ownership of the work asserted. 328 F.3d 1136, 1142-43 (9th Cir. 2003). No such facts exist here, let alone are evident from the FAC. Conversely, *Warren* confirms Plaintiffs' standing, acknowledging that Section 501(b) authorizes suit by "[t]he legal or beneficial owner of an exclusive right," and the paradigm beneficial owner, as *Warren* explains, is "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." 328 F.3d at 1144 (quoting legislative history). A registration naming a publisher as claimant is exactly what one expects to see for such an author. Nor does a mismatch between the name on a certificate and the Plaintiff's name matter: a registration mistake does "not bar infringement actions, unless the alleged infringer ha[d] relied to its detriment on the mistake," *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010), and Anthropic

does not claim such reliance. The *Bartz* court said as much in certifying the class against Anthropic: "if an author's loan-out were named instead of the author, or vice-versa, such a mistake would not stall our litigation." *Bartz*, Dkt. 244 at 23, RJN, Ex. 4.

Despite the lack of legal or factual support for Defendants' motion, Plaintiffs offer 13 declarations with this brief to provide evidence to address any "presumption" afforded by the registration certificates so that this case may proceed on the merits. *See* Gallo Decl. ¶ 3 (name misspelled); Zanetti Decl. ¶ 3 (name misspelled); Khalfani-Cox Decl. ¶¶ 3–4 (name misspelled and d/b/a trade name used); Siff-Exkorn Decl. ¶ 3 (registration number corrected to TX0006250760); Stay Decl. ¶ 3 (written agreement); Clark Decl. ¶ 3 (written agreements); Chase Decl. ¶¶ 2–3 (written agreement); Merzer Decl. ¶¶ 2–3 (written agreement); Gobel Decl. ¶¶ 2–3 (written agreement); Cope Decl. ¶¶ 2–3 (written agreement); Bates Decl. ¶¶ 2–3 (written agreement); Carkhuff Decl. ¶¶ 2–5 (written agreements). Anthropic's challenge to standing based on the registration are clearly facts in dispute, not appropriate at this stage.

Defendants motion is properly be denied.

### E. Co-Authors and Rights and Permissions Designees are Not Necessary Parties Whose Absence Warrants Dismissal

#### 1. Co-owners may sue without joining other co-owners.

As discussed above, "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." 17 U.S.C. § 201(d)(2). That includes the right to sue for infringement of the rights owned by that rightsholder. *See Minden Pictures, Inc.*, 795 F.3d at 1003. In other words, "under the 1976 Act, a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right." *Id*. at 1004.

Courts have specifically rejected Defendants' Rule 19 compulsory joinder argument, explaining that the right to prosecute an infringement claim "is a right that may be exercised independently of co-owners; a joint owner is not required to join his other co-owners in an action for infringement." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (citations omitted). *See also Sybersound Recs., Inc.*, 517 F.3d at 1145 ("co-owners may bring suit for copyright infringement

without joining other co-owners"). Of course, any Rule 19 concerns regarding duplicative suits disappear in any event when the evidence establishes that plaintiffs are sole owners of the exclusive rights at issue. *See New Form, Inc. v. Cozumel Films, LLC*, No. CV 05-067 DT (AJWX), 2006 WL 8433989, at *13-14 (C.D. Cal. Mar. 15, 2006). Regardless, any owner of an infringed right can pursue his or her claim and co-owners are simply not indispensable parties. *See*, e.g., *New Form - King v. Najm*, No. CV084164DSFVBKX, 2010 WL 11519552, at *2 (C.D. Cal. Apr. 19, 2010).

*Shropshire v. Canning* offers Defendants no assistance. There, the court found that the plaintiff's publisher, Kris Publishing, was a necessary and indispensable parties because the plaintiff had agreed it could not "grant licenses for the musical composition… without approval from Kris Publishing" and "Kris Publishing is entitled to a portion of 'all royalties, monies, and all other compensation' associated" with the work, so that the plaintiff did not truly hold exclusive rights to the work at issue sufficient for standing. No. 10-CV-01941-LHK, 2011 WL 90136, at *7-8 (N.D. Cal. Jan. 11, 2011). In contrast, the *Shropshire* court declined to find a second publisher, Evergreen Publishing, to be a necessary and indispensable party when its only ownership interest was entitlement to a share of gross receipts from royalties. *Id*. at *8.

Defendants' reliance on *White v. Marshall* fares no better. There, the court found that joinder of a co-claimant on plaintiff's copyright registration was necessary when plaintiff "provide[d] no evidence or argument that he is the real party in interest." *White v. Marshall*, No. 07-CV-892, 2009 WL 230096, at *3 (E.D. Wis. Jan. 30, 2009). In this case, Plaintiffs offer both.

*Willis v. Elec. Arts, Inc.* is similarly inapplicable. *Willis* found that UNLV was an indispensable party because there was an apparent dispute about whether Willis or UNLV was the copyright owner of the work at issue, and, "if Willis were to prevail on his infringement claim, [defendant] would have to pay money to Willis in accordance with a judgment in addition to its existing obligation to pay UNLV under their licensing agreement." (citations omitted). *Willis v. Elec. Arts, Inc.*, No. 208CV01311KJDLRL, 2009 WL 10710038, at *5 (D. Nev. Sept. 23, 2009). But no such concern about duplicative payment obligations is currently at issue here. It is undisputed that Defendants failed to license any of the works at issue. *See* FAC ¶¶ 8, 241, 250, 251, 254, 255.

The FAC alleges that each Plaintiff is the owner or exclusive rights holder of the respective work(s). FAC ¶¶ 21-143; Ex. A. Indeed, each Plaintiff is an owner of the exclusive rights that Defendants infringed upon and thus is a proper party with standing to pursue the instant claims.[3] As such, each Plaintiff has standing to sue for the infringement at issue. Plaintiffs' short, plain allegations of ownership suffice. *See Hybrid Promotions,* 2016 WL 10988656, at *8.

**2. Rights and permissions designees are not necessarily owners, and their absence does not warrant dismissal.**

Defendants' arguments regarding the "Rights and Permissions" listings on the copyright registration borders on frivolous since, *inter alia*, a copyright holder can list a non-exclusive licensee (who unquestionably would not have standing to pursue an infringement claim) as the contact for rights and permissions. Simply put, "the 'rights and permission' designation does not confer standing to sue for copyright infringement. Instead, it does little more than afford information for the 'organization that should be contacted for permission to use the work.'" *Micro Focus (U.S.), Inc. v. Express Scripts, Inc.*, No. CV PX-16-0971, 2019 WL 557080, at *7 (D. Md. Feb. 12, 2019) (quoting Compendium of U.S. Copyright Office Practices § 622.1 (3d. Ed. 2017)); *see also Patrick v. Poree*, No. 23-12732, 2023 WL 8643538, at *2 (11th Cir. Dec. 14, 2023) (rejecting contention that being listed under the "Rights and Permissions" confers ownership). Defendants' arguments are meritless and their motion to dismiss on this ground must be denied.

**F. The Statute of Limitations Does Not Bar Plaintiffs' Claims**

"In the Ninth Circuit, the statute of limitations is an affirmative defense that can provide the basis for dismissing a claim at the 12(b)(6) stage only if the allegations in the complaint or judicially noticeable materials establish beyond dispute that the statute ran prior to the filing of the case."

[3] Defendants' assertion that Plaintiffs are pursuing a pro-rated share of damages and must disclaim any claim as to the share of absent co-owners is incorrect. Defendants' citations to *Spatola v. Desrouleaux* and *Shropshire v. Canning* are unavailing. *Spatola* involves a plaintiff disclaiming against co-authors of the allegedly infringing work who were not named defendants. *See Spatola v. Desrouleaux*, No. CV 23-06191-MWF(EX), 2026 WL 712576, at *1 (C.D. Cal. Mar. 5, 2026). And *Shropshire* only has a cursory mention of a plaintiff disclaiming damages in excess of a royalty percentage it would be entitled to, but the *Shropshire* court explicitly stated that it would not consider that allegation. *Shropshire*, 2011 WL 90136, at *7. Regardless, that is inapplicable here where Plaintiffs are the sole owners of the exclusive rights infringed.

*Robinson v. Binello*, 771 F. Supp. 3d 1114, 1124 (N.D. Cal. 2025) (citations omitted). Indeed, a plaintiff need only "plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). Here, Plaintiffs plead facts plausibly alleging that the statute of limitations affirmative defense does not apply because of the discovery rule, concealment by Defendants, and tolling based on the approval of the *Bartz* settlement.

**1. Plaintiffs' claims are timely under the discovery rule.**

Defendants concede that this Court is required to follow precedent and apply the discovery rule to Plaintiffs' claims. Thus, Plaintiffs' claims did not accrue until they discovered, or by exercising reasonable diligence should have discovered, Defendants' infringements, and Plaintiffs' discovery requires factual discovery for each work, a fact question.

The statute of limitations on a copyright infringement claim runs three years after the claim accrued. *See* 17 U.S.C. § 507(b). However, under the discovery rule, "a claim for copyright infringement may accrue when the copyright owner discovers, or reasonably should have discovered, the infringement." *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1240–41 (9th Cir. 2022). When asserting that the discovery rule applies, a plaintiff need only "plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Wolf v. Travolta*, No. 2:14-CV-938-CAS VBKX, 2014 WL 6685560, at *7 (C.D. Cal. Nov. 24, 2014) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (2005)).

"When a plaintiff reasonably should have discovered facts for purposes of … the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion." *Broberg v. The Guardian Life Ins. Co. of Am.*, 90 Cal. Rptr. 3d 225, 232 (2009). "All that is required is a short and plain statement establishing the applicability of the delayed discovery doctrine." *Sino-US Inv. & Mgmt. Consultant Ltd. v. Rhee*, No. CV-20-08597-AB-MRW, 2021 WL 5020469, at *5 (C.D. Cal. Mar. 9, 2021) (internal quotations omitted).

Plaintiffs plainly allege the time and manner of discovery. Anthropic knows quite well that Plaintiffs did not discover, and could not have reasonably discovered, that their specific works were included in Anthropic's private, internal database until November 24, 2025, when the direct notice to class members was completed. FAC ¶ 236. The time and manner of discovery is plainly pled and must be accepted as true at this stage. Plaintiffs also plead they could not discover infringements before Anthropic provided direct notice to *Bartz* class members.

A plaintiff acts with reasonable diligence when it "demonstrates that 'a reasonable investigation at [the] time would not have revealed a factual basis for that particular cause of action.' " *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) (quoting *Fox*, 110 P.3d at 917). For instance, courts apply the discovery rule when the conduct at issue "was committed in an inherently secretive manner." *Bloom v. Act, Inc.*, No. CV 18-6749-GW(SSX), 2019 WL 13603899, at *8 (C.D. Cal. Nov. 18, 2019) (citations omitted). Similarly, courts apply the discovery rule when the defendant is alleged to have conducted acts "secretly" and thus "had exclusive knowledge" of their acts. *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *10 (N.D. Cal. July 22, 2025). And a plaintiff has no duty to investigate claims of which they are unaware. *See Providence Publications, LLC v. Hub Int'l Ins. Servs., Inc.*, No. 1:24-CV-00109-KES-BAM, 2024 WL 3361133, at *5 n.2 (E.D. Cal. July 8, 2024) (citing *Starz Ent., LLC*, 39 F.4th at 1247) ("To the extent defendant argues that the second element … requires plaintiff to have undertaken an investigation even without inquiry notice of the potential infringement, that is not required under Ninth Circuit precedent.")

Plaintiffs allege precisely that—their "works were included in Anthropic's private, internal database" and "only Defendants control and possess the evidence of which works they copied and distributed." FAC ¶ 236. Moreover, "Anthropic never attempted to offer any compensation to Plaintiffs for the pirated copying and use of the works and was fully aware of their illegal scheme, taking steps to hide the full extent of its copyright theft of Plaintiffs' respective works." FAC ¶ 15. The private, internal nature of the alleged infringement impeded Plaintiffs from discovering Defendants' infringement any earlier than what is alleged.

The *Bartz* record confirms the point. As late as December 4, 2024, the class plaintiffs,

represented by counsel and litigating against Anthropic, could allege only that Anthropic "has been particularly secretive about the sources of its training corpus for Claude" and "has admitted to using a dataset called The Pile." *Bartz*, Dkt. 70 ¶ 33, RJN, Ex. 2. The amended class complaint did not allege that Anthropic had downloaded LibGen or PiLiMi or used BitTorrent at all; those facts only became public record through the *Bartz* orders of June and July 2025. *Bartz*, Dkt. 231, RJN, Ex. 3; Dkt. 244 at 2–3, RJN, Ex. 4. If Plaintiffs' class counsel suing Anthropic did not know where those books were pirated from in December 2024, an unrepresented individual author could not be charged with that knowledge in June of 2023. Accordingly, Plaintiffs' claims are timely under the discovery rule.

**2. The FAC adequately alleges class action tolling.**

The filing of a class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). The suspension protects class members who later opt out and file their own actions, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350–54 (1983); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488–89 (9th Cir. 1985), and it rests on notice: a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs." *American Pipe*, 414 U.S. at 555. The Ninth Circuit has rejected any rule "which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled"; it is enough that the defendant "had ample notice of the nature of [the plaintiff's] claims" and "was thus alerted to make appropriate investigations." *Tosti*, 754 F.2d at 1489. Because tolling turns on facts, dismissal is proper only if the complaint's allegations, "read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (citation omitted).

*Bartz v. Anthropic* was filed on August 19, 2024. The amended class complaint added loan-out companies and retained the "training, research, or development" language. *Bartz*, Dkt. 70 ¶ 63, RJN, Ex. 2. On July 17, 2025, the *Bartz* court certified a class of "[a]ll beneficial or legal copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen or PiLiMi

downloaded by Anthropic." *Bartz*, Dkt. 244 at 31, RJN, Ex. 4.

The FAC in this case alleges that each Plaintiff owns registered works that were included in the Books3, LibGen, and PiLiMi datasets Anthropic downloaded in 2021 and 2022 (FAC ¶¶ 232–233); that each Plaintiff, other than Matthew Chase, was a member of the *Bartz* class who timely opted out of the settlement (including Laura Esquivel and Jordi Castells whose late opt-outs the *Bartz* court expressly allowed over Anthropic's spurious objections) (FAC ¶ 234; *Bartz*, Dkt. 680 at 13–14, RJN, Ex. 8); and that Plaintiffs' claims were tolled during the pendency of *Bartz* (FAC ¶ 236). This Court may take judicial notice of the *Bartz* filings and orders. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Those allegations more than "demonstrat[e] a potential factual dispute that could affect whether the defense applies." *Rabin*, 725 F. Supp. 3d at 1031. Anthropic's three challenged basis do not change that result.

*First*, Anthropic's contention that the Books3 and LibGen claims "expired before *Bartz* was filed" and so could not be suspended (Dkt. 48 at 12–13) rests entirely on the injury-occurrence rule of *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014). But Anthropic concedes that this Court must apply the discovery rule. Dkt. 48 at 14; *Starz*, 39 F.4th at 1240–41. Under that rule, and on the FAC's allegations (FAC ¶ 236), no Plaintiff's claim accrued before that Plaintiff discovered or reasonably could have discovered that Anthropic had copied his or her work. So, no limitations period had expired — or, using Defendants' own chronology, had even begun to run — when *Bartz* was filed. The principle that tolling suspends a running period rather than reviving an expired one (Dkt. 48 at 12) does not apply to a claim that had not expired. Class action tolling is therefore a meritorious independent ground of timeliness that operates alongside, not instead of, the discovery rule addressed in Section IV.F.1 to defeat any limitations defense.

*Second*, Anthropic argues that *Bartz* gave it no notice of a distribution claim because the class complaint "complained of reproduction of works to train LLMs, not distribution of works by BitTorrent uploads." Dkt. 48 at 11. That mischaracterizes the class pleadings. Both *Bartz* complaints alleged that the class held "the exclusive rights, including the rights of reproduction and **distribution**," under § 106, and that Anthropic "infringed on the exclusive rights, under 17 U.S.C. § 106, of Plaintiff and members of the proposed Class by, *among other things*, reproducing the

works." *Bartz*, Dkt. 1 ¶¶ 70–71, RJN, Ex. 1; Dkt. 70 ¶¶ 74–75, RJN, Ex. 2 (emphasis added). Anthropic quotes the second sentence and dubiously omits the first, along with the words "among other things." A complaint that pleads infringement of the distribution right and expressly declines to confine the infringing acts to reproduction puts Anthropic on actual notice of a distribution theory of infringement.

More fundamentally, the distribution claim here is not a "different or peripheral" claim of the kind at issue in *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008), or *Donahue v. Union Pacific Railroad Co.*, 2021 WL 2458351, at *2 (N.D. Cal. June 16, 2021). Those cases involved distinct statutory theories including compensation discrimination versus promotion discrimination, and failure to accommodate versus disparate treatment, respectively. Each required proof of different decisions, by different actors, and on different facts. Plaintiffs' direct infringement count arises under the same statute, against the same defendant, for the same registered works, and from the same two transactions that *Bartz* put in suit: Mann's June 2021 LibGen torrent session and Anthropic's July 2022 PiLiMi torrent session. FAC ¶¶ 192–212, 245. The alleged uploads are not a separate course of conduct; they are the other half of the very BitTorrent downloads that *Bartz* litigated, performed by the same BitTorrent client, in the same session, by the same operator.

When using BitTorrent, "[b]oth uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). A defendant that investigates how its client downloaded a torrent necessarily investigates what that client sent; the witnesses and records are identical. That provides the "ample notice of the nature of" the claim that *Tosti* requires. 754 F.2d at 1489.

The *Bartz* record confirms the point. Anthropic asserts that a defendant reading the class complaint "would have no reason to preserve evidence or marshal witnesses on the operation of a peer-to-peer client." Dkt. 48 at 11. Yet the *Bartz* motion for final approval reports that the *Bartz* parties deposed "the individuals who torrented the relevant datasets," that the expert topics exchanged on August 1, 2025 "included the pirate libraries; Anthropic's use of Class Works;

torrenting, seeding, and leeching," and that Anthropic bargained for a release of claims "aris[ing] from Defendant's alleged past torrenting." *Bartz*, Dkt. 619 at 2–4, RJN, Ex. 6 (quoting Settlement Agreement § 1.29). "Seeding" and "leeching" are the BitTorrent protocol terms for uploading files to the network, the same uploading process described in Defendants' use of BitTorrent as alleged in the FAC as a violation of Plaintiffs' distribution rights under 17 U.S.C. § 106(3). FAC ¶¶ 157, 185-191, 203-205.

The certification order likewise recites that "Anthropic's co-founder used the infamous BitTorrent protocol to copy books peer-to-peer from decentralized copies of another pirate library." *Bartz*, Dkt. 244 at 2, RJN, Ex. 4. The Ninth Circuit looks to such "records from the class litigation" to determine how "the parties and the certifying court understood" the scope of the class case. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1107–08 (9th Cir. 2024). A defendant that attended depositions regarding torrenting, exchanged expert topics on that topic, and paid for a release of torrenting claims cannot claim unfair surprise or lack of notice at a torrenting claim in this action. Additionally, other overlapping litigation includes *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811, and *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:26-cv-00880, both of which remain pending and include BitTorrenting allegations.

*Third*, Anthropic's footnote 4 contends that the central library theory fell outside the *Bartz* class because the class was "defined by works used in LLM training." Dkt. 48 at 12 n.4. This is not a basis for dismissal. The class definitions say, "training, research, or development," *Bartz*, Dkt. 1 ¶ 59, RJN, Ex. 1; Dkt. 70 ¶ 63, RJN, Ex. 2, and the FAC alleges that the central library was a "permanent, general-purpose resource" maintained for "potential future uses, research, or general reference." FAC ¶¶ 216, 220. The certified class was defined by "any book in the versions of LibGen or PiLiMi downloaded by Anthropic," with no requirement that the book have been used in training, *Bartz*, Dkt. 244 at 31, RJN, Ex. 4, and Judge Alsup separately denied summary judgment on, and set for trial, the "pirated copies used to create Anthropic's central library." *Bartz*, Dkt. 231 at 29–31, RJN, Ex. 3. This is the very reason Anthropic settled with the class. Accordingly, the central library copies were not outside the class case; they ***were*** the case.

Footnote 5 contends that each Plaintiff's tolling period ended on a different date depending

on when the Plaintiff was "unambiguously exclude[d]" from the class. Dkt. 48 at 13, n.5. That is a reason to deny the Motion, not to grant it. Under *DeFries*, tolling continues "unless and until a court accepts a new definition that unambiguously excludes" the plaintiff, and "[a]mbiguity in the scope of the class definition should be resolved in favor of continuing to extend *American Pipe* tolling." 104 F.4th at 1099–1100. When each of more than 100 Plaintiffs, and each of their works, were unambiguously opted out — after the July 17, 2025 class certification order, the October 17, 2025 Works List limitation, or an opt-out accepted as late as July 20, 2026 — is a fact-bound, Plaintiff-by-Plaintiff inquiry that cannot be resolved on the pleadings alone. And even on Anthropic's own endpoints the claims survive: the period from the filing of *Bartz* on August 19, 2024, through the October 17, 2025 Works List order was suspended (424 days), so a July 2022 PiLiMi claim that would otherwise have expired in July 2025 ran into late August or September 2026—well after this action was filed on June 17, 2026, or the FAC was filed on August 17, 2026. Anthropic's motion, which argues that the statute of limitations on claims arising from the July 2022 acquisitions expired in July 2025 (Dkt. 48 at 12), never engages with the actual arithmetic.

### G. Plaintiffs' Distribution Claim is Sufficiently Pled

Anthropic attacks Plaintiffs' distribution claim on three grounds: no actual dissemination, no volitional conduct, and *de minimis* use. Dkt. 48 at 15–20. Each misreads the FAC, and the first two are foreclosed by the Ninth Circuit's precedent of the very protocol at issue: in BitTorrent, "[b]oth uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). Anthropic relies on *Fung*'s description of BitTorrent. Dkt. 48 at 19. Judge Lee recently applied *Fung* to an AI developer's torrenting, denying a motion to dismiss and noting that the defendant did not "dispute that downloading and uploading are infringing acts of reproduction and distribution." *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 5:25-cv-06213-EKL, Dkt. 61 at 7 (N.D. Cal. June 11, 2026), RJN, Ex. 9. And Anthropic, facing a claim before the same court for "copying and distribution of Works in Suit via torrenting," inconsistently "contests the merit of these claims but does not move to dismiss them at this time." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 5:26-cv-00880-EKL, Dkt. 103 at 4

(N.D. Cal. Aug. 3, 2026), RJN, Ex. 10.

**1. The FAC plausibly alleges actual dissemination.**

Actual dissemination is required to violate the distribution right, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007), and Plaintiffs allege it. Defendants sent protected material from their works to other BitTorrent users; Defendants did not merely make each work available. In *Annabooks, LLC v. Issuu, Inc.*, 2020 WL 6873646, at *3–4 (N.D. Cal. Sept. 24, 2020), a third-party user uploaded a textbook to Issuu's library, and the complaint did not allege that anyone downloaded or even viewed it. Here, the FAC identifies the operations in which the dissemination occurred: the June 2021 LibGen and July 2022 PiLiMi torrenting and the personnel who directed and performed it. FAC ¶¶ 185, 192, 198, 201–212. The FAC also alleges that Defendants' BitTorrent software was configured to upload and actually uploaded pieces of Plaintiffs' works to other users during those operations, *id.* ¶¶ 238, 245(c), 246. *Annabooks* did not require a complaint to name a recipient or attach a transfer log (which only Anthropic possesses); information-and-belief pleading of facts peculiarly within the defendant's possession is sufficient. *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017).

Paragraph 246 is not conclusory because the FAC pleads the mechanism that makes the upload allegation plausible: BitTorrent breaks files into pieces; a peer that has downloaded a piece becomes a source of it for others; and the BitTorrent software Defendants used to acquire more than seven million files were used to upload all the parts of each complete work, with no step taken to disable, limit, or throttle that uploading. FAC ¶¶ 187–188, 192, 198, 209, 213, 246. That is how the Ninth Circuit has described the protocol: "even before the entire download is complete, a user can begin sharing the pieces he has already downloaded with other peers." *Fung*, 710 F.3d at 1027. An allegation that software run at those defaults through an acquisition of that scale did what the protocol is designed to make it do is an inference from pleaded facts, not a "[t]hreadbare recital[]." *Iqbal*, 556 U.S. at 678. Even *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008), a summary-judgment decision, recognized that availability "in conjunction with other circumstantial evidence" can support an inference of actual transfer. Neither *Howell* nor *Annabooks* makes a witnessed transfer the exclusive means of pleading dissemination.

**2. The FAC plausibly alleges volitional conduct.**

Volitional conduct concerns causation, not whether software executes an instruction automatically. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666–70 (9th Cir. 2017); *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019). In every case Anthropic cites, the defendant supplied a system and someone else selected the content and initiated the copy. These include Usenet subscribers in *Giganews*, 847 F.3d at 669–70; the subscriber who enabled automatic recording in *Fox Broadcasting Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014); the platform users in *BMG Rights Management (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 842 (C.D. Cal. 2024); and the user who posted the textbook in *Annabooks*.

The FAC alleges a materially different role: Anthropic's personnel selected the LibGen and PiLiMi collections, directed their acquisition through BitTorrent, and performed or controlled the operations, FAC ¶¶ 185, 201–212; the torrent files Mann chose to load determined which files Defendants' software would announce and serve to other peers; and "[d]istribution of unauthorized copies to others was a known, necessary, and accepted feature of the piracy method that Defendants deliberately chose," *id.* ¶ 246. The *Bartz* court found exactly that kind of selection: before the July 2022 download, Anthropic's engineers "compared Anthropic's five million copies torrented from LibGen against PiLiMi's seven million copies available to torrent, and torrented only the two million copies 'that [we]re not in Lib[G]en.'" *Bartz*, Dkt. 244 at 3, RJN, Ex. 4. A client serves only what it has stored, so that file-by-file selection determined which works Defendants' software would offer to the swarm, and "select[ing] any material for upload, download, transmission, or storage" is volitional conduct. *VHT*, 918 F.3d at 734 (quoting *Giganews*, 847 F.3d at 670).

Anthropic's answer that any upload occurred "automatically" and "at the user's command" because a third-party peer requested the piece (Dkt. 48 at 18) mischaracterizes the protocol. A requesting peer sends only a request message; it is the sending client, here the software Defendant Mann was running, that reads the requested piece from its own storage and transmits it. *See Fung*, 710 F.3d at 1028 (sender's computer stands "ready to distribute the movie file (or, more accurately, parts thereof) to others upon request"). Anthropic concedes that the FAC pleads Mann's volitional conduct for the reproduction because "[e]ach was a personal act of reproduction on a machine under

Mann's control." Dkt. 48 at 18 (quoting FAC ¶ 265). The same machine, in the same session, under the same operator, performed the uploads (FAC ¶ 246), and Anthropic identifies no principle under which a person who volitionally operates a machine for the pieces flowing in does not act volitionally for the pieces flowing out. That the sender retains its own copy is of no consequence because every BitTorrent upload leaves the sender's copy in place, and *Fung* holds that uploading "violates the copyright holder's right to distribution." 710 F.3d at 1034.

**3. Anthropic's *de minimis* argument assumes facts the FAC does not allege.**

Anthropic's "fragment" argument depends on a quantitative premise the FAC does not contain. The FAC's reference to thousands of users does not allege that any work was divided into thousands of pieces, much less that Anthropic sent only one. *Compare* FAC ¶ 189 *with* Dkt. 48 at 19. The FAC alleges "pieces" in the plural and specifies neither a maximum amount nor the expressive content transmitted. FAC ¶¶ 245–246. Nor does the *de minimis* doctrine apply here.

Anthropic relies on cases that are inapplicable to the FAC. *Newton* asks whether copying is "so meager and fragmentary that the average audience would not recognize the appropriation," and addressed a three-note segment used in a new musical work. *Newton v. Diamond*, 388 F.3d 1189, 1192–93 (9th Cir. 2004) (citation omitted). A BitTorrent piece is not a fragment used in a new work; it is a verbatim excerpt of the file, transmitted so that the recipient can reassemble the original. Dkt. 48 at 19 (citing *Fung*, 710 F.3d at 1026). *Forlenza* permits a pleading-stage ruling only where "the complaint's own description of the alleged copying" establishes the fragmentary use, *id.*, and the FAC describes no transfer size. Anthropic's *Malibu Media* decision, 2016 WL 464045, at *7–13 (N.D. Ill. Feb. 8, 2016), is a summary-judgment failure-of-proof ruling following a Rule 37(c)(1) exclusion; it says nothing about pleading deficiencies. As the *Bartz* court wrote in rejecting Anthropic's argument that some LibGen files were only partial books, "stealing a page of a copyrighted work is still a violation." *Bartz*, Dkt. 244 at 18, RJN, Ex. 4.

Should the Court find any allegation insufficient, Plaintiffs request leave to plead the specific torrents and files from which Defendants acquired each work, the configuration and default upload behavior of Defendants' clients, and the piece length specified in the public torrent metadata. *See Annabooks*, 2020 WL 6873646, at *4; *Kadrey*, 788 F. Supp. 3d at 1041–42 & n.4.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied in its entirety. Alternatively, should the Court find that any of the allegations in the FAC insufficient, Plaintiffs respectfully request leave to amend.

Dated: October 2, 2026

Respectfully submitted,

**JAMES H. BARTOLOMEI, III P.A.**

By: *_/s/ James H. Bartolomei III_*
James H. Bartolomei III
james@duncanfirm.com
Michael Manapol
michael@manapollaw.com
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600

**DONIGER / BURROUGHS**
Stephen M. Doniger (SBN 179314)
Benjamin F. Tookey (SBN 330508)
Nelson A. Campbell (SBN 357579)
Andres Navarro (SBN 358499)
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
anavarro@donigerlawfirm.com
ncampbell@donigerlawfirm.com

**GAFNI & LEVIN, LLP**
Adam I. Gafni, Esq. (SBN: 230045)
11811 San Vicente Blvd.
Los Angeles, California 90049
Telephone: 424.744.8344
adam@gafnilaw.com

*Attorneys for Plaintiffs*