**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WILLIAM SHAKESPEARE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC, PBC, ET AL.,<br><br>Defendants. | Case No. 5:26-cv-5931-PCP<br><br>**DEFENDANT ANTHROPIC PBC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The *Bartz* Final Judgment Bars the Claims on Eight Released Works. .......... 1

B. Plaintiffs Fail to Plead How They Own Works Registered to Others, and Plaintiffs Must Identify Absent Owners. .......... 3

1. Conclusory Ownership Allegations Cannot Overcome Registrations Naming Others, and Declarations Cannot Fill the Gap. .......... 3

2. Rule 19(c) and § 501(b) Require Plaintiffs to Identify Absent Owners So They Receive Notice. .......... 5

C. The Claims Are Time-Barred Under the Copyright Act's Three-Year Limitations Period. .......... 6

1. The *Bartz* Complaint Gave Anthropic Notice of a Reproduction Claim for LLM Training, Not a Distribution Theory or Central Library Theory. .......... 7

2. Plaintiffs Fail to Meet Their Pleading Burden to Invoke the Discovery Rule. .......... 9

D. The FAC Does Not Plausibly Allege Anthropic Distributed Any Work. .......... 10

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Amalfitano v. Google, Inc.*,
No. 14-cv-673-BLF, 2015 WL 456646 (N.D. Cal. Feb. 2, 2015)....2

*Annabooks, LLC v. Issuu, Inc.*,
No. 20-cv-04271-CRB, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020)....11

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014)....2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....11, 12, 14

*Atl. Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008)....11, 12

*Bartz v. Anthropic PBC*,
No. 4:24-cv-05417-AMO, 2026 WL 2087580 (N.D. Cal. July 20, 2026)....1, 2

*Benak v. All. Cap. Mgmt. L.P.*,
349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006)....10

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003)....4

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)....10, 14

*Columbia Pictures Indus., Inc. v. Fung*,
No. 06-cv-5578, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)....10

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007)....5

*Dayabaran v. Edlow*,
No. 26-cv-2343-SVK, 2026 WL 2196276 (N.D. Cal. July 29, 2026)....12, 13

*Defries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024)....7, 8

*Dorval v. Rahimi*,
No. 2:24-cv-1347, 2024 WL 3659601 (C.D. Cal. July 5, 2024)....9

*Forlenza v. AT&T*,
No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549 (C.D. Cal. Apr. 12, 2004)....13

*Fox Broadcasting Co. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2014)....13

*Hybrid Promotions, LLC v. Zaslavsky*,
No. 16-cv-2227, 2016 WL 10988656 (C.D. Cal. Oct. 5, 2016)....3, 4

*ImprimisRx, LLC v. OSRX, Inc.*,
No. 21-CV-01305, 2023 WL 2919318 (S.D. Cal. Apr. 12, 2023)....3

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....2

*King v. Najm*,
No. 08-cv-4164, 2010 WL 11519552 (C.D. Cal. Apr. 19, 2010)....5

*pLux Global Auto Sales v. Nissan North America, Inc.*,
No. 2:21-cv-2157, 2022 WL 17253584 (E.D. Cal. Nov. 28, 2022)....2

*Malibu Media LLC v. Doe*,
No. 13-cv-6312, 2016 WL 464045 (N.D. Ill. Feb. 8, 2016)....13, 14

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019)....3

*Media Rights Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019)....9

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015)....6

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004)....13, 14

*O'Connor v. Boeing N. Am., Inc.*,
311 F.3d 1139 (9th Cir. 2002)....9

*Payne v. Manilow*,
No. 18-cv-3413, 2018 WL 6321638 (C.D. Cal. Oct. 29, 2018)....3, 4

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)....10, 11

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)....12, 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)....2

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998)....4

*Shapiro v. Hasbro, Inc.*, No. 15-cv-2964, 2015 U.S. Dist. LEXIS 190477 (C.D. Cal. Sept. 24, 2015) ....13

*Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881 (9th Cir. 2005)....4, 5

*Skidmore v. Led Zeppelin*, No. 15-cv-3462, 2016 WL 1442461 (C.D. Cal. Apr. 8, 2016) ....5

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)....11

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236 (9th Cir. 2022)....7

*Stoll v. Gottlieb*, 305 U.S. 165 (1938) ....2

*Tosti v. City of Los Angeles*, 754 F.2d 1485 (9th Cir. 1985)....7

*Trinh v. Wells Fargo & Co.*, No. 16-cv-2985, 2017 WL 5548777 (S.D. Cal. Nov. 16, 2017)....6

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019)....12

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)....4

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008)....7, 8

**FEDERAL STATUTES**

17 U.S.C. § 106(3) ....14

17 U.S.C. § 201(b) ....4

17 U.S.C. § 410(c) ....3

17 U.S.C. § 501(b) ....1, 5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition concedes the key facts on each issue and asks the Court to fill the gaps with declarations and briefing. Neither substitutes for pleading facts to support a plausible claim for relief.

Eight works were released in *Bartz* and cannot be asserted here. They appear on the settlement's Works List but not on the opt-out list the *Bartz* court approved, both of which form the final judgment. Plaintiffs do not dispute those facts. Any relief from that judgment must come from that court.

Sixty-seven works are registered to others, and three Plaintiffs now withdraw part of their claims for that reason. The FAC does not say how title passed to Plaintiffs for the other 64, and the 13 declarations do not cure that omission. Plaintiffs should plead those facts and identify absent owners so they receive the notice 17 U.S.C. § 501(b) requires.

The claims are untimely. Plaintiffs do not dispute that the injury rule bars them. Their discovery-rule allegation—a single sentence covering 102 owners and 875 works—fails to meet their burden. And *American Pipe* does not save the distribution or central-library theory, because the *Bartz* complaint asserted no such claim or class.

The distribution theory also fails on the merits. The FAC alleges what BitTorrent can do, not what Anthropic did. It identifies no work, no recipient, and no completed transfer. Any upload it describes was triggered by a third party's command, carried out automatically by third-party protocol, not any volitional act of Anthropic. And the FAC alleges at most that Anthropic sent "pieces" of files, without showing that any piece was a substantial part of a work.

## II. ARGUMENT

### A. The *Bartz* Final Judgment Bars the Claims on Eight Released Works.

The eight works are on the *Bartz* Works List and absent from the opt-out list. Both form the *Bartz* court's final judgment. *Bartz v. Anthropic PBC,* No. 4:24-cv-05417-AMO, 2026 WL 2087580, at *3, 7–8 (N.D. Cal. July 20, 2026) ("The Court has reviewed the list of Class Members who have timely opted out of the Settlement as set forth in the JND Declaration ¶ 102 and Ex. J";

finding "350 valid opt outs, spanning just 1,802 Works, were timely submitted"); *Bartz*, ECF No. 619-3, Ex. J (opt-out list).[1]

Plaintiffs do not dispute either point for the eight works. They only argue that they intended to opt out (but could not locate their titles) or that the *Bartz* judgment failed to record their opt-out. Opp. 6–8. But the *Bartz* judgment is still a final judgment that precludes Plaintiffs' claims on the eight works. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746–47 (9th Cir. 2006); *Stoll v. Gottlieb,* 305 U.S. 165, 170 (1938) (federal judgment is "final until reversed in an appellate court, or modified or set aside in the court of its rendition").

A class member who believes she was wrongly included should seek Rule 60 relief from the *Bartz* court and meet its excusable-neglect standard. *Bartz*, 2026 WL 2087580, at *7, 8; *Amalfitano v. Google, Inc.*, No. 14-cv-673-BLF, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (dismissing purported opt-out claim in view of class judgment, reasoning plaintiff must first go to class settlement court to seek relief from the judgment under Rule 60); *see also* Opp. 7 (acknowledging the *Bartz* court "reserve[d] jurisdiction over the implementation of the Settlement"). Plaintiffs' reliance on *ASARCO* and *Khoja* is unavailing. Opp. 6. *ASARCO* turned on ambiguities in the settlement release, which is not at issue here. *ASARCO, LLC v. Union Pac. R.R. Co.,* 765 F.3d 999, 1008–09 (9th Cir. 2014). And *Khoja* relied on facts in judicially noticed documents that were subject to multiple interpretations. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999–1002 (9th Cir. 2018). Here, there is no ambiguity in the papers. Unless the *Bartz* court amends the judgment, it is binding, and the claims on these eight works should be dismissed. *Lux Global Auto Sales v. Nissan North America, Inc.,* No. 2:21-cv-2157, 2022 WL 17253584, at *4 (E.D. Cal. Nov. 28, 2022).[2]

---

[1] Anthropic's Motion cited the list as provided by JND, the settlement administrator. Mot. 2, 4. It is the same list the *Bartz* court reviewed. *Bartz*, 2026 WL 2087580 at *7.

[2] Anthropic does not oppose Plaintiffs' alternative request of dismissal without prejudice to allow them to seek relief in the *Bartz* court. Opp. 8.

### B. Plaintiffs Fail to Plead How They Own Works Registered to Others, and Plaintiffs Must Identify Absent Owners.

#### 1. Conclusory Ownership Allegations Cannot Overcome Registrations Naming Others, and Declarations Cannot Fill the Gap.

Anthropic's challenge is narrow: it does not challenge ownership allegations for 808 of the 875 asserted works, only the 67 whose copyright registrations expressly name someone else as the owner. Plaintiffs globally call Anthropic's standing challenge "factually inaccurate and legally unsupportable," yet three Plaintiffs have since withdrawn one book each (Opp. 1, 5 n.1; Bates Decl. ¶ 4), and the rest filed declarations to support ownership. Neither Plaintiffs' bare ownership allegations nor 13 declarations defeats dismissal.

Plaintiffs argue "mere allegations of copyright ownership suffice" and that registrations naming others "at best, create a potential fact dispute." Opp. 10–11. Their extended legal discussion of divisibility, beneficial ownership, and royalty arrangements does not help them. Opp. 8–11. These concepts might explain why a registration might name someone else, but a plaintiff's pleading must allege facts supporting ownership—even more so when the registration serving as prima facie ownership names someone else as the only owner. And Plaintiffs' new insistence that they are "sole owners" of the works (Opp. 14 n.3) deepens that conflict rather than resolves it.

Plaintiffs' cases confirm the point. Each accepted an ownership allegation that matched the registration or explained in detail why it did not. In *Hybrid Promotions*, the pleading did "not reference or attach" the registration naming a third party. *Hybrid Promotions, LLC v. Zaslavsky*, No. 16-cv-2227, 2016 WL 10988656, at *8 (C.D. Cal. Oct. 5, 2016). In *Payne*, the complaint alleged detailed chain-of-title facts through dated transfers from the registered claimants. *Payne v. Manilow,* No. 18-cv-3413, 2018 WL 6321638, at *1, *6 (C.D. Cal. Oct. 29, 2018). *Malibu Textiles* addressed whether the plaintiff had tied its claim to registered works it alleged it owned, not whether a plaintiff may claim works whose registrations name someone else. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,* 922 F.3d 946, 951–52 (9th Cir. 2019). Here, the FAC identifies each work by registration number, FAC ¶ 6 & Ex. A, and for these 64 works the registrations name someone else. Those registrations are prima facie evidence of ownership, 17 U.S.C. § 410(c), and the FAC does not reconcile them. Courts do not accept ownership allegations "contradicted by documents

referred to in the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see* Mot. 6–7 (collecting cases); *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305, 2023 WL 2919318, at *6 (S.D. Cal. Apr. 12, 2023) (dismissing where registration named another claimant).

The declarations cannot fill that gap. A court "may not look beyond the complaint to a plaintiff's moving papers." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted). Indeed, Plaintiffs' own authorities declined to consider declarations and evidence outside the complaint. *Hybrid*, 2016 WL 10988656, at *6–7; *Payne*, 2018 WL 6321638, at *4. Their declarations suggest varying accounts of how they allegedly came to own works registered to others and offer only to provide the details of those positions in discovery.[3] But Plaintiffs must allege facts that, "if proved, would confer standing." *Warren*, 328 F.3d at 1140. Those facts belong in a pleading, not in promises of later discovery.

At most, the declarations bear on futility, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), and they preview what an amended pleading must address. Ten works involve curable mismatches: misspelled names, a trade name, an author-owned LLC, and a registration number for a different book. Gallo Decl. ¶ 3; Zanetti Decl. ¶ 3; Khalfani-Cox Decl. ¶¶ 4–5; Carkhuff Decl. ¶ 5; Stay Decl. ¶¶ 3–4; Siff-Exkorn Decl. ¶ 3. Anthropic does not oppose leave on those works. The other 53 rest on agreements Plaintiffs say exist but have not described, including 46 works HRD Press claims by registration, assignment, or exclusive license without saying which occurred, when, or with whom. FAC ¶¶ 80–81; Carkhuff Decl. ¶¶ 2–4. For each, an amendment should identify the instrument, the parties, the right conveyed, and its date. The date matters because a plaintiff may sue only for infringement "committed while he or she is the owner," and the FAC places the conduct in 2021 and 2022. *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005); FAC ¶¶ 179, 192, 209. Plaintiffs say they hold these contracts, so pleading them should cost little.

One work cannot be cured. Dr. Lerner's registration names Johns Hopkins University Press

[3] Chase Decl. ¶ 2 (assignment); Merzer Decl. ¶ 2 (same); Clark Decl. ¶ 3 (reversion from publisher); Gobel Decl. ¶ 2 (contract that "confirms I am the copyright owner"); Bates Decl. ¶ 2 (agreement "showing we own the copyright interest"); Carkhuff Decl. ¶¶ 2, 4 (assignment or exclusive license); Lerner Decl. ¶ 2 ("contractual right to bring suit"); Cope Decl. ¶ 2 (same).

as his "employer," ECF No. 48-2 at 54, making the Press the owner absent a signed writing providing otherwise. 17 U.S.C. § 201(b). Dr. Lerner identifies no such writing. He claims only "right to bring suit for infringement," Lerner Decl. ¶¶ 2, 3 (based on advice of counsel), which is not an exclusive right. *Silvers*, 402 F.3d at 883–85, 890. The Court should dismiss the claim on his work without leave to amend and the claims on the other 63 works with leave to amend.

**2. Rule 19(c) and § 501(b) Require Plaintiffs to Identify Absent Owners So They Receive Notice.**

Plaintiffs argue that co-owners may sue without joining one another and are not indispensable. Opp. 12–14. But Anthropic Motion does not seek compelled joinder or dismissal. It asks only that Plaintiffs identify absent owners under Rule 19(c), and that the parties then propose a procedure for notice under 17 U.S.C. § 501(b). Mot. 8–10 & n.3. The request covers works whose registrations name no Plaintiff, name a non-party co-owner, list a publisher as the rights-and-permissions contact, or other interested owners known to Plaintiffs. LeGolvan Decl. Exs. 1–3.

A co-owner's right to sue alone does not dispense with notice. Section 501(b) provides that a court "shall require" notice to "any person whose interest is likely to be affected by a decision in the case." *See Silvers*, 402 F.3d at 886 (owner "may sue, with other owners being entitled to notice and joinder"). Plaintiffs' authorities do not hold otherwise. *Davis v. Blige* drew its joinder rule from § 501(b)'s permissive "may require" clauses, not the mandatory "notice" clause. 505 F.3d 90, 99 (2d Cir. 2007). And in *King v. Najm*, the court "ordered Plaintiffs to give notice of [the] lawsuit to" the absent co-owner before deciding whether he was indispensable. No. 08-cv-4164, 2010 WL 11519552, at *2–3 (C.D. Cal. Apr. 19, 2010). Anthropic asks for the same first step: notice.

Plaintiffs concede the concern behind the request. They say Rule 19 concerns about duplicative suits "disappear . . . when the evidence establishes that plaintiffs are sole owners." Opp. 13. But sole ownership has not been shown, nor even alleged in the FAC. And it is doubtful. The registrations name others as sole owners, three have already dismissed their claims facing a standing challenge, and the declarants' offers to explain the ownership grounds in discovery does not solve the Rule 19(c) pleading problem. Plaintiffs' efforts to distinguish *Shropshire* and *Willis* make the same point: in each, necessity turned on what the absent party's agreement gave it. Opp.

13; *see also Skidmore v. Led Zeppelin*, No. 15-cv-3462, 2016 WL 1442461, at *18 (C.D. Cal. Apr. 8, 2016) (limiting recovery to 50%, commensurate with co-owner's royalty interest under the agreement). Publishing agreements often split recoveries, as the *Bartz* class notice recognized: "[m]any publishing contracts provide that copyright infringement recoveries are shared equally between authors and publishers." *Bartz*, ECF No. 440-1 at 14. Any absent owner holding an exclusive right can bring its own suit over the same work. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015). Yet each Plaintiff, as an alleged "sole owner," seeks the full recovery, including any revenue share of absent owners. Opp. 14 n.3. Only Plaintiffs know which works carry such splits.

Plaintiffs next call the rights-and-permissions point "frivolous" because the listed contact may be a mere non-exclusive licensee without standing. Opp. 14. The listed contacts may be exclusive or non-exclusive. HRD Press, for example, is the rights-and-permissions contact on many registrations and claims many works as "exclusive licensee." FAC ¶ 81. Anthropic agrees the listing alone does not confer ownership. But only Plaintiffs know which contacts hold an interest, and Rule 19(c) requires only that they say so.

The absent owners have a real stake. When Plaintiffs opted the works out of *Bartz*, all interests in the work was removed for every rightsholder. *Bartz*, ECF No. 440-1 at 21, 24. Those owners lost any share of the settlement because of Plaintiffs' unilateral choice, and the absent owners should at least learn that Plaintiffs now seek the full recovery for works they may share. The Court can order Rule 19(c) identification without dismissing any claim, *Trinh v. Wells Fargo & Co.*, No. 16-cv-2985, 2017 WL 5548777, at *5 (S.D. Cal. Nov. 16, 2017), and should then direct the parties to confer on a § 501(b) notice procedure, as is occurring in *Cambronne*. CMC Tr. 21:13–22:7, *Cambronne*, ECF No. 225.

### C. The Claims Are Time-Barred Under the Copyright Act's Three-Year Limitations Period.

Plaintiffs do not dispute that, under the injury rule, the Books3 and LibGen claims, and any distribution claim tied to the LibGen download, expired before *Bartz* was filed. *See* Opp. 18. A claim accrues "when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S.

663, 670 (2014). The FAC places the Books3 download in early 2021, the LibGen download in June 2021, and any distribution "at the time they downloaded." FAC ¶¶ 179, 192, 238.

The Books3 and LibGen claims expired by mid-2024, before *Bartz* was filed on August 19, 2024, and *American Pipe* cannot revive an expired claim. Mot. 12. Thus, the LibGen and Books3 claims are barred unless saved by the discovery rule exception. *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1241, 1246 (9th Cir. 2022). For the July 2022 PiLiMi download, those claims expired under the injury rule in July 2025 unless tolled by *American Pipe* or the discovery rule.

Below Anthropic addresses *American Pipe* (as to the PiLiMi claims) and then the discovery rule (as to all claims).[4]

**1. The *Bartz* Complaint Gave Anthropic Notice of a Reproduction Claim for LLM Training, Not a Distribution Theory or Central Library Theory.**

Plaintiffs agree that class tolling "rests on notice" from the "class complaint." Opp. 17. Their own authority confirms this. *Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024). The *Bartz* complaint alleged one infringing act: "reproducing the works . . . in datasets used to train their artificial intelligence models." *Bartz*, ECF Nos. 55, 70 ¶ 75. It alleged no distribution claim. Plaintiffs point to its statement that class members hold the distribution right and its allegation that Anthropic infringed "among other things" by reproducing works. Opp. 18–19. The first describes what class members own, not what Anthropic did nor what rights were asserted. The second names no act but reproduction. General language like this does not give "fair notice" of a claim the complaint never pleaded. *Williams v. Boeing Co.*, 517 F.3d 1120, 1131, 1136 (9th Cir. 2008) (rejecting argument that general references in a discrimination complaint to "terms of employment" and "pay" gave notice of compensation claim).

Plaintiffs call uploads "the other half of the very BitTorrent downloads that *Bartz* litigated." Opp. 19. But the *Bartz* complaint did not mention uploads or BitTorrent at all, as Plaintiffs concede. Opp. 17 (*Bartz* complaint "did not allege that Anthropic had . . . used BitTorrent at all"). *Tosti*

[4] Anthropic preserves its position that the Copyright Act does not permit the discovery rule. Further, Anthropic assumes Plaintiffs are not pursuing a concealment theory. Plaintiffs mention it only in passing, but do not defend any pleaded concealment theory. Opp. 15–16.

found notice because the individual suit "involved the same allegations that were made in the class suit." *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985). The allegations here differ. A training claim asks what Anthropic copied and how it used the copies. A distribution claim asks whether Anthropic's software sent pieces of a work to others, which pieces, to whom, and with what result. Nothing in the *Bartz* complaint would prompt a defendant to examine torrent-client settings or investigate what third-party BitTorrent peers did.

Plaintiffs fall back on later events in *Bartz*: depositions, expert topics, and the settlement agreement. Opp. 19–20. None shows what the complaint alleged, and tolling turns on the complaint. *Williams*, 517 F.3d at 1132 ("subsequent characterizations" did not show what complaints alleged). Plaintiffs say *DeFries* allows courts to look at post-complaint materials. Opp. 20. But *DeFries* did so to mark the end of tolling, not the start. *DeFries* confirmed that the complaint is the notice source for the start of tolling; but "[t]he end of *American Pipe* tolling is less clear-cut than its beginning." 104 F.4th at 1097. The end of tolling—not disputed here—thus permits consulting post-complaint records such as class certification briefing to see if the plaintiff was later "unambiguously excluded" by class narrowing. *Id*. at 1105. Nothing in *DeFries* suggests that later records can supply theories the complaint never pleaded.

The same principle answers the central-library theory. Opp. 20. The *Bartz* class covered works used by Anthropic "in LLM training, research, or development." *Bartz*, ECF No. 1 ¶ 59; ECF No. 70 ¶ 63. When Plaintiffs quote the class definition, they omit "LLM." Opp. 20. Indeed, Plaintiffs targets the opposite of the *Bartz* complaint: that Anthropic retained the books in a "central library" for "purposes *unrelated* to the immediate training of LLM" such as for use as a "general reference," "brows[ing] books" or other purposes "*distinct* . . . from AI training." FAC ¶¶ 216, 220, 222 (emphasis added); Mot. 12 n.4. That the *Bartz* court later certified a different class untethered to LLM development and set those claims for trial, resulting in a settlement, shows how the case developed, not what the complaint alleged. *Williams*, 517 F.3d at 1132, 1136.

Because the *Bartz* complaint gave no notice of either theory, *American Pipe* does not toll them. Under the injury rule, those claims based on the July 2022 PiLiMi download expired in July 2025, before Plaintiffs filed suit.

**2. Plaintiffs Fail to Meet Their Pleading Burden to Invoke the Discovery Rule.**

Plaintiffs say FAC ¶ 236 pleads the time and manner of discovery: November 24, 2025, when the *Bartz* class notice was completed. Opp. 16. That date answers the wrong question. The discovery rule asks when a reasonably diligent plaintiff "could have investigated and detected the copying," *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019), not when someone confirmed it definitively with explanation of legal significance. Accrual waits for neither. *Id.*; *Dorval v. Rahimi*, No. 2:24-cv-1347, 2024 WL 3659601, at *2 (C.D. Cal. July 5, 2024) (discovery rule turns on knowledge of facts, not their "legal significance").

One date for 102 independent authors, estates, loan-out companies, and publishers is the "categorically den[ial]" the Ninth Circuit has rejected, *see O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1157 (9th Cir. 2002), and it is not plausible on its face. Some Plaintiffs may be "unrepresented individual author[s]," as Plaintiffs say in briefing, Opp. 17, though the FAC does not allege it. Others are commercial rightsholders whose business is managing intellectual property. One publisher asserts 425 works, nearly half of those at issue, from a catalog of more than a thousand titles sold to most of the Fortune 500. FAC ¶¶ 79–81. Another "publishes, distributes, licenses, and manages . . . intellectual property assets." *Id.* ¶ 45. Plaintiffs also include two estates and several author-owned companies. *Id.* ¶¶ 27, 37, 59, 91, 112, 128. Yet the FAC treats all 102 Plaintiffs as one and asks the Court to infer that every one of them first learned of their potential claims on the same day, and that none could reasonably have learned sooner. That inference is not plausible on the facts they allege.

Plaintiffs then suggest Anthropic's conduct was secret, so they had no duty to investigate, and some of the specific datasets were not revealed until 2025 from the *Bartz* case. Opp. 16, 17. But the *Bartz* case proves the opposite. The *Bartz* plaintiffs—Andrea Bartz, Charles Graeber, and Kirk Wallace Johnson—brought claims against Anthropic in August 2024. And they relied on much of the same 2020 and 2021 public sources that the FAC alleges as publicizing large-scale online sourcing of books for LLM training, including Anthropic's public statements on its use of Books3 for training. *Compare Bartz*, ECF No. 1 ¶¶ 31–40, 55, *with* FAC ¶¶ 164–76 & n.8. The filing of *Bartz* confirms that diligent authors could use the same public information to bring claims years

earlier, yet nothing in the FAC explains why Plaintiffs could not have done the same. *See Benak v. All. Cap. Mgmt. L.P.*, 349 F. Supp. 2d 882, 891–92 & n.10 (D.N.J. 2004) (similarly situated plaintiff's earlier complaint, which relied on "many of the same facts," "reinforce[d]" that later plaintiffs could have filed earlier), *aff'd*, 435 F.3d 396 (3d Cir. 2006).

A single allegation of late discovery covering 102 Plaintiffs does not square with the public record the FAC describes, and it does not explain why any of them could not sue when similarly situated authors did. Plaintiffs may be able to reconcile these facts through amendment, but only with facts specific to each Plaintiff. An amended complaint should state, for each one, when and how it learned of its claims and why it could not reasonably have investigated and discovered them earlier. Without those facts, the discovery rule cannot save their claims.

### D. The FAC Does Not Plausibly Allege Anthropic Distributed Any Work.

Plaintiffs have not alleged key elements of a distribution claim: actual dissemination, caused by Anthropic's volitional conduct, of more than insubstantial "pieces" of their works.

No binding authority confirms their upload theory. Plaintiffs do not defend *Napster*. *See* Mot. 17 n.6. Their substitutes prove less. Meta and Anthropic did not challenge the distribution claims in *Strike 3*, 835 F. Supp. 3d at 1036, or *Concord*, Manapol Decl. Ex. 10 at 4, so neither says anything about the theory's viability. And *Fung*'s statement that "[b]oth uploading and downloading copyrighted material are infringing acts" is dicta that cites only *Napster* (Mot. 17 n.6) and offers no analysis beyond the conclusion. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). No was there anything to analyze. *Fung* was a contributory case, and the only direct infringement found was downloads. *Columbia Pictures Indus., Inc. v. Fung,* No. 06-cv-5578, 2009 WL 6355911, at *9 (C.D. Cal. Dec. 21, 2009). In secondary-liability cases against peer-to-peer services (*Fung* and *Napster*), proof of downloads shows direct infringement and ends the inquiry. Those courts never had to decide what a plaintiff must plead when an upload-based distribution claim stands alone against a downloading defendant. Here it does.

**No actual dissemination.** Distribution requires "actual dissemination." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007). The FAC pleads only capability. Its upload allegation is one conclusory sentence, pleaded on information and belief for seven million files and

875 works: Anthropic's clients "were configured to, and did, upload pieces of the downloaded files." FAC ¶ 246. It identifies no work, no recipient, and no completed transfer.

*Annabooks* dismissed a complaint built the same way: a description of (1) what a system can do, *compare Annabooks, LLC v. Issuu, Inc.,* No. 20-cv-04271-CRB, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020) (Issuu "transmit[s] copies [of works] . . . to the computers of its users"), *with* FAC ¶ 187 (BitTorrent "distribute[s] the pieces . . . amongst multiple users"), and (2) a conclusory assertion of transmission, *compare Annabooks*, Dkt. 1 ¶¶ 21–22 (Issuu "distributed . . . copies of Plaintiff's copyrighted work"), *with* FAC ¶ 246 (Anthropic "did[] upload"). Plaintiffs' distinction, that no Issuu user downloaded or viewed the work, Opp. 22, merely restates the defect here. That is why *Annabooks* required details about "the transmission of [the asserted] Work <u>specifically</u>." 2020 WL 6873646, at *4 (emphasis in original). The FAC supplies none for any of the 875 works.

Plaintiffs' briefing reinforces mere capability, arguing it is reasonable to infer software "run at those defaults" "did what the protocol is designed to make it do." Opp. 22. But what a software can do is the making-available theory *Perfect 10* forecloses. 508 F.3d at 1162. That Anthropic ran BitTorrent clients to download files is at most only consistent with the "possibility" of uploads. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' information-and-belief authority then draws the line they ask the Court to erase. *Soo Park* pleaded specific facts "suggestive" of an unlawful agreement to prevent witness testimony, including a witness who cooperated until a detective's call and a prosecutor's threat, and relied on information and belief only for coordination she could not observe. *Soo Park v. Thompson,* 851 F.3d 910, 915–17 (9th Cir. 2017). The suggestive facts justified the belief allegation. But under copyright law, mere availability supports an inference of transfer only "in conjunction with other circumstantial evidence"; "[o]n its own" it shows attempt, and "there is no basis for attempt liability in the statute." *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983–84 (D. Ariz. 2008). The "other" circumstances *Howell* had in mind came from *Hotaling*: a library that placed infringing works in its collection for the only purpose of disseminating them to patrons and kept no records, making proof of distribution "impossible." 118 F.3d at 203–04. Unlike in *Hotaling*, the FAC alleges Anthropic ran BitTorrent to *acquire* files, not

to disseminate them, and Plaintiffs plead the opposite of a proof problem: "no discovery is required to identify the acts of infringement." FAC ¶ 245. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Plaintiffs also do not respond to the Motion's separate point that even a completed transfer is not necessarily a transfer *by Anthropic*. Mot. 16–17. Without facts about the peer-to-peer system's architecture, a court cannot tell whether the file holder "distributes an unauthorized copy" or "simply provides a third party with access and resources to make a copy on their own," which sounds at most in contributory infringement. *Howell*, 554 F. Supp. 2d at 986–87; *see* FAC ¶ 149 (Anthropic "contributed to" infringement). Plaintiffs' assertion that "the sending client . . . reads the requested piece from its own storage and transmits it," Opp. 23, appears nowhere in the FAC and cannot be added by briefing. *Dayabaran v. Edlow*, No. 26-cv-2343-SVK, 2026 WL 2196276, at *4 (N.D. Cal. July 29, 2026) (opposition brief may not supplement pleadings).

**No volitional conduct by Anthropic.** The parties agree that volition is a question of proximate causation. Opp. 23; *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). A defendant causes infringement, rather than merely facilitating the system through which it occurs, if it "selected [the] material for . . . transmission," exercised control beyond the system's "general operation," or "instigated" the transfer. *Id.* at 670; *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019). The FAC pleads the opposite: any upload occurred as an "inherent[]" and "necessary" "function of the BitTorrent protocol," triggered only by a third-party peer's "simultaneous[]" download. FAC ¶¶ 188, 245–46; Opp. 23:23–28. Thus, Plaintiffs cannot allege the control or instigated tests.

Plaintiffs' "selection" theory also fails. They say Anthropic chose which collections to acquire, directed the torrenting, and deduplicated files, and thus "determined which files Defendants' software would announce and serve." Opp. 23. Each is a choice about what to acquire: the volitional act behind reproduction, which Anthropic does not contest. Mot. 18. None is a choice to transmit a work to a recipient, which is a choice made by third-party BitTorrent users. *VHT* turned on that distinction: Zillow was not liable for photos its feed providers "select[ed]," only for

images its own staff hand-picked to display. 918 F.3d at 733–34. The FAC identifies no work Anthropic picked to transfer and no decision to transfer to anyone.

Plaintiffs' new account of BitTorrent mechanics, in which the requesting peer sends only a request and "the sending client . . . reads the requested piece from its own storage and transmits it," Opp. 23, is not in the FAC. *Dayabaran*, 2026 WL 2196276, at *4. But if it were, it would describe *Giganews*. There, "at the request of their subscribers, *Giganews* and Livewire delivered content to download," but because distribution on request "happens automatically," *Giganews* "has not engaged in volitional conduct." 847 F.3d at 669 (citation omitted). Nor does it matter that downloading and uploading occur on one machine. Opp. 23. In *Fox Broadcasting*, Dish operated the system, set the recording window, decided how long copies remained available, and prevented users from stopping recordings once begun. The Ninth Circuit still held for Dish because "operating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made." *Fox Broadcasting Co. v. Dish Network L.L.C.,* 747 F.3d 1060, 1067 (9th Cir. 2014). The FAC alleges Anthropic commanded the downloads and does not contest volition for them. FAC ¶ 265. But the FAC alleges no outbound transmission Anthropic commanded; on Plaintiffs' account, a stranger's request triggered the automatic operation of third-party software.

**No substantiality.** Copying carries "no legal consequences" unless it is "substantial," measured by "the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole." *Newton v. Diamond*, 388 F.3d 1189, 1193, 1195 (9th Cir. 2004). That is an element of Plaintiffs' claim—their burden—and courts address it on the pleadings. Opp. 24; *Forlenza v. AT&T*, No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549, at *10 (C.D. Cal. Apr. 12, 2004) (faulting complaint that "failed to show any quantitative or qualitative significance of the portions" at issue); *Shapiro v. Hasbro, Inc.*, No. 15-cv-2964, 2015 U.S. Dist. LEXIS 190477, at *25 (C.D. Cal. Sept. 24, 2015) (dismissal for failure to allege substantiality; plaintiff's "burden"). Nor is substantiality limited to creating a "new work." Opp. 24. *Newton* says "the substantiality requirement applies throughout the law of copyright." 388 F.3d at 1195. And the only case cited that addresses substantiality for BitTorrent uploads treats it as a requirement. *Malibu Media LLC*

*v. Doe*, No. 13-cv-6312, 2016 WL 464045, at *8–9 (N.D. Ill. Feb. 8, 2016). That it arose at summary judgment does not matter: what a plaintiff must prove, it must first plead in the complaint. *See Iqbal*, 556 U.S. at 678–79.[5]

The "quantitative premise" Plaintiffs say Anthropic imported, Opp. 24, is theirs. The FAC alleges that BitTorrent breaks each file into "pieces" distributed "between and amongst multiple users," and that files are "shared simultaneously with thousands of other users." FAC ¶¶ 187, 189; Mot. 18–19; *see Fung*, 710 F.3d at 1026–27. Plaintiffs now say "thousands" counts users, not pieces. Opp. 24. They do not explain why that matters. On either reading, a downloader assembles a file from pieces sent by multiple peers—whether hundreds or thousands—and Anthropic supplied, at most, some of them. FAC ¶¶ 245–46. Nothing in the FAC moves that account from fragments toward a substantial part of any work. Indeed, Plaintiffs concede the FAC "specifies" no "expressive content transmitted" and "describes no transfer size." Opp. 24. On the FAC's own allegations, the Court cannot assess whether anything Anthropic sent was significant, quantitatively or qualitatively, to any work as a whole. *Newton*, 388 F.3d at 1195. Having pleaded that Anthropic was one source among many, Plaintiffs had to allege facts making its contribution a substantial "copy." 17 U.S.C. § 106(3). They did not.[6]

**Plaintiffs' proffer does not cure.** On what is already their second pleading, Plaintiffs' proffer would not cure the defects. Opp. 24. The "specific torrents and files from which Defendants acquired each work" describe acquisition, not what went out, to whom, or whether any transfer completed. *Id.* The "configuration and default upload behavior of Defendants' clients," *id.*, is what the FAC already alleges, FAC ¶ 246, and is capability, not actual dissemination, selection, or instigation. And Plaintiffs do not explain how "the piece length specified in the public torrent

---

[5] Plaintiffs say *Malibu Media* rests on "Rule 37(c)(1) exclusion," Opp. 24, but its substantiality ruling considered the excluded evidence. 2016 WL 464045, at *6, *8 ("Even if those contested declarations are considered . . .").

[6] The *Bartz* order Plaintiffs cite, Opp. 24, rejected Anthropic's argument that de minimis questions might defeat predominance because torrenting errors may have produced partial books. Manapol Decl. Ex. 4 at 17–18. That argument concerned downloads (not uploads) and depended on the protocol misfiring on download. Conversely, for uploads, transmission in "pieces" is the protocol's design. FAC ¶¶ 187–89. The order's "stealing a page" remark analyzed no substantiality authority. Manapol Decl. Ex. 4 at 18.

metadata" renders plausible that Anthropic volitionally disseminated a substantial piece of any work to anyone. Opp. 24.

## III. CONCLUSION

The Court should (1) dismiss the claims on the eight *Bartz* works without prejudice to Plaintiffs' seeking relief from the *Bartz* court; (2) dismiss the claim on Dr. Lerner's work without leave to amend, and the claims on the remaining 63 works registered to others with leave to plead, for each, the instrument, the parties, the right conveyed, and its date; (3) order Plaintiffs to comply with Rule 19(c) and direct the parties to propose a procedure for notice under 17 U.S.C. § 501(b); (4) dismiss all claims as time-barred with leave to amend; and (5) dismiss Count I to the extent it rests on the distribution right, 17 U.S.C. § 106(3).

Dated: October 9, 2026

WHITE & CASE LLP

By: *  /s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

Yar R. Chaikovsky
Mark Davies
Andy LeGolvan
Amir Jabbari

Attorneys for
Defendant Anthropic PBC