**JAMES H. BARTOLOMEI, III P.A.**
James H. Bartolomei III (SBN 301678)
Of Counsel at Duncan Firm, P.A.
Michael Manapol (SBN 258300)
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
james@duncanfirm.com
michael@manapollaw.com

**GAFNI & LEVIN, LLP**
Adam I. Gafni, Esq. (SBN 230045)
11811 San Vicente Blvd.
Los Angeles, California 90049
Telephone: (424) 744-8344
adam@gafnilaw.com

**DONIGER / BURROUGHS**
Stephen M. Doniger (SBN 179314)
Benjamin F. Tookey (SBN 330508)
Nelson A. Campbell (SBN 357579)
Andres Navarro (SBN 358499)
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
ncampbell@donigerlawfirm.com
anavarro@donigerlawfirm.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS WILLIAM SHAKESPEARE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, et al.,<br><br>Defendants. | Case No. 5:26-cv-5931-PCP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ANTHROPIC PBC'S MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS**<br><br>Hearing Date: December 17, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL BACKGROUND ..... 1

III. ARGUMENT ..... 4

A. A preliminary peek shows at least a real possibility that Plaintiffs can state a distribution claim, and speculation that the theory will be dismissed is not good cause ..... 5

B. The motion would not dispose of the issue at which the discovery is directed, because that discovery is inseparable from claims, issues, and defenses that will proceed regardless ..... 7

1. The stay rests only on a partial challenge to one count ..... 7

2. The discovery Anthropic seeks to stay reaches beyond the distribution theory ..... 8

3. Anthropic should not be permitted to fault Plaintiffs for omitting facts peculiarly within its possession while blocking discovery of those facts ..... 10

C. Anthropic has not shown any concrete burden, and a stay would prejudice Plaintiffs ..... 11

D. If the Court enters any stay, it should be narrow ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Case(s)** **Page(s)**

*Adjaye v. Cook*,
2024 WL 647636 (N.D. Cal. Feb. 15, 2024) ........ 6

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
5 F.3d 378 (9th Cir. 1993) ........ 5

*Bartz v. Anthropic PBC*,
No. 24-cv-05417 (N.D. Cal.) ........ 3, 8, 11, 13

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ........ 4, 11

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ........ 4

*BMG Rights Mgmt. (US) LLC v. Anthropic PBC*,
No. 5:26-cv-02334-EKL (N.D. Cal.) ........ 3, 7, 12

*Campbell v. District of Columbia*,
972 F. Supp. 2d 38 (D.D.C. 2013) ........ 7

*Chicken Soup for the Soul, LLC v. Meta Platforms Inc.*,
No. 26-cv-02333-VC (TSH), 2026 WL 2668437 (N.D. Cal. Sept. 10, 2026) ........ 12

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ........ 2, 5

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 5:26-cv-00880-EKL (N.D. Cal.) ........ 3, 7, 12

*Gaudet v. Metro. Life Ins. Co.*,
No. 25-cv-00694-PCP (N.D. Cal. Aug. 25, 2025) ........ 4

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) ........ 4, 10, 11

*Little v. City of Seattle*,
863 F.2d 681 (9th Cir. 1988) ........ 5

*Mlejnecky v. Olympus Imaging Am., Inc.*,
2011 WL 489743 (E.D. Cal. Feb. 7, 2011) ........ 4, 5

*Nazemian v. NVIDIA Corp.*,
No. 4:24-cv-01454-JST (N.D. Cal. Feb. 19, 2026) ........ 7

*Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*,
2026 WL 104229 (N.D. Cal. Jan. 14, 2026) ........ 6

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
732 F. Supp. 3d 1101 (N.D. Cal. 2024) ........ 4, 7, 10, 13

*Seven Springs Ltd. P'ship v. Fox Cap. Mgmt. Corp.*,
2007 WL 1146607 (E.D. Cal. Apr. 18, 2007) ........ 10

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 10

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ........ 5

**Rules**

Fed. R. Civ. P. 1 ........ 5, 10

Fed. R. Civ. P. 15 ........ 6

Fed. R. Civ. P. 26(b)(1) ........ 11

Fed. R. Civ. P. 26(c)(1) ........ 4

Fed. R. Civ. P. 45 ........ 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Anthropic asks the Court to pause discovery into what its own BitTorrent clients did during the June 2021 LibGen and July 2022 PiLiMi torrenting sessions—i.e., how those clients were configured and what they uploaded—because it believes its pending motion to dismiss will eliminate what it calls Plaintiffs' "distribution theory." ECF No. 67 ("Mot."). But this Court has already explained: "[E]ven if I agree that the claim, as stated, fails, if I think there's a possibility or a likelihood that they could ultimately state a valid claim, I might deny the motion." ECF No. 69 ("Tr.") at 10:15–17. Indeed, Anthropic does not argue that the defects it asserts cannot be cured, and neither its motion to dismiss nor its reply asked the Court to deny leave to amend the distribution theory and the stay motion itself assumes amendment.

Perhaps more importantly, Anthropic's requested stay is not "targeted" but instead would improperly pause the same discovery relevant to Plaintiffs' reproduction claim, Count II, willfulness, and Anthropic's own release, limitations, and fair-use defenses—e.g., discovery into client configurations, session logs, network records, and the testimony of the people who ran the clients. Entirely failing to justify this, Anthropic submits no declaration or other evidence of burden. It only makes conclusory assertions of a "vast technical investigation" which appears to be the very investigation it is already conducting in at least two other cases in this District where the court ordered discovery on torrenting claims to proceed—including a claim for "distribution of Works in Suit via torrenting" that Anthropic chose not to challenge on the pleadings. On the other hand, a stay would unfairly delay discovery Plaintiffs need to prepare any amended pleading by the January 15, 2027 amendment deadline and to learn what Anthropic has preserved. The motion should be denied.

## II. RELEVANT FACTUAL BACKGROUND

**Plaintiffs' claims.** Plaintiffs are 102 authors, estates, loan-out companies, and publishers asserting infringement of 875 registered works. ECF No. 37 ("FAC") ¶¶ 2, 21–143 & Ex. A. They allege that Defendants Anthropic PBC, its chief executive officer Dario Amodei, and co-founder Benjamin Mann acquired Plaintiffs' works from pirate libraries: Books3 by HTTP download in early 2021, and Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi") through the BitTorrent protocol in

June 2021 and July 2022. *Id.* ¶¶ 179, 185–212, 245. Mann personally performed the LibGen torrenting, with Amodei's approval; both authorized and directed the PiLiMi torrenting; and Amodei "approved the risk-mitigation strategies used to carry out the BitTorrent operations." *Id.* ¶¶ 198–212, 265–67.

BitTorrent is a two-way, peer-to-peer protocol: a peer that downloads a piece of a file becomes a source of that piece for others in the "swarm." *Id.* ¶¶ 187–91, 246. Plaintiffs allege that the clients Defendants used "were configured to, and did, upload pieces of the downloaded files — including pieces of Plaintiffs' works — to other BitTorrent users during the download process," and that Defendants "took no steps to disable, limit, or throttle that uploading." *Id.* ¶ 246. Count I asserts direct infringement of the reproduction and distribution rights against all Defendants; Count II asserts contributory infringement against Amodei and Mann. *Id.* ¶¶ 259–89. Plaintiffs allege the infringement was willful and seek statutory damages of up to $150,000 per work. *Id.* ¶¶ 241, 270, 272, 286–87.

**Anthropic's motion to dismiss.** Anthropic moved to dismiss on four grounds: (1) the *Bartz* release as to eight works; (2) lack of standing and Rule 19 as to 67 works; (3) the statute of limitations; and (4) Count I's alleged failure "to the extent it rests on the distribution right." ECF No. 48 ("MTD"), Notice of Motion. Anthropic expressly "does not contest" that Plaintiffs adequately allege volitional conduct for the reproduction of LibGen and PiLiMi. MTD at 18. Its distribution argument has three parts: no actual dissemination, no volitional conduct, and de minimis use. *Id.* at 15–20. It also argues that, absent more detail about the protocol's "architecture," uploading "sounds only in contributory infringement." *Id.* at 17. And Anthropic argues that the distribution theory is untimely because a defendant reading the *Bartz* complaint "would have no reason to preserve evidence or marshal witnesses on the operation of a peer-to-peer client." *Id.* at 11. Anthropic asks the Court to dismiss Count I "to the extent" it rests on the distribution right; it does not ask that leave to amend be denied, although its reply requests exactly that relief as to a different work. *Id.* at 20; ECF No. 62 ("Reply") at 5, 15.

Plaintiffs opposed, ECF No. 54 ("Opp."), arguing, in part, that the Ninth Circuit has held that uploading while using BitTorrent "violates the copyright holder's right to distribution," *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013), and requesting leave, if the MTD is granted, to plead "the specific torrents and files from which Defendants acquired each work, the

configuration and default upload behavior of Defendants' clients, and the piece length specified in the public torrent metadata." Opp. at 21, 24. The motion to dismiss is set for hearing on December 17, 2026.

**The *Bartz* record and parallel, related litigation.** In *Bartz v. Anthropic PBC*, No. 24-cv-05417 (N.D. Cal.), the class plaintiffs reported that the parties deposed "the individuals who torrented the relevant datasets" and exchanged trial expert topics that "included . . . torrenting, seeding, and leeching." *Bartz*, ECF No. 619 at 3–4 (ECF No. 56-6); *see* Opp. at 19–20. Anthropic then negotiated a release of claims "arising from Defendant's alleged past torrenting (including uploading and seeding)." MTD at 5 (quoting Settlement Agreement § 1.29). In *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:26-cv-00880-EKL (N.D. Cal.) ("*Concord II*"), Anthropic faces a claim for "copying and distribution of Works in Suit via torrenting," which it "contests" but "does not move to dismiss." *Concord II*, ECF No. 103 at 4:12–16. In *Concord II* and the related *BMG Rights Management (US) LLC v. Anthropic PBC*, No. 5:26-cv-02334-EKL (N.D. Cal.), Judge Lee ordered that "[d]uring phase one, the parties shall prioritize discovery relating to the claims related to alleged torrenting," and the parties' joint statement confirms that Phase I "fact discovery shall proceed with respect to Plaintiffs' claims regarding Defendants' direct infringement and/or contributory infringement by torrenting." *Concord II*, ECF No. 133 at 2:10–13, 13:24–26; *see Concord II*, ECF No. 117.

**The motion to stay.** Anthropic asks the Court to stay "discovery directed to Plaintiffs' theory that Anthropic infringed the distribution right by uploading pieces of their works over BitTorrent." Mot. at i. It describes that discovery as including "analysis of how Anthropic's BitTorrent clients were configured in June 2021 and July 2022," "forensic expert analysis of network activity," and efforts "to trace whether any piece of that work was sent to any other user." *Id.* at 4. Anthropic would permit discovery into "which works Anthropic downloaded over BitTorrent, when, and why," but defer discovery into "whether, what, and to whom Anthropic's clients uploaded." *Id.* at 5. The stay would begin at the December 17 hearing and, if the Court grants leave to amend, continue "until Anthropic answers the amended complaint." *Id.* at 5–6. The motion is supported by no declaration or other evidence. *See id.* at i. Neither Amodei nor Mann has joined it.

**Discovery to date.** Discovery opened after the parties' Rule 26(f) conference, and the Court confirmed at the case management conference that "in the absence of a stay of discovery . . . discovery

is open." Tr. 7:11–12, 7:20–22. Anthropic's initial disclosures identify, among the documents it "may use to support its claims and/or defenses," "[d]ocuments sufficient to show the transformative nature of Anthropic's use, and the absence of any distribution or output of the works identified by Plaintiffs." Declaration of Michael Manapol ("Manapol Decl.") Ex. 1 at 15:19–16:5. On October 27, 2026, Anthropic served each of the 102 Plaintiffs with 40 requests for production and 15 interrogatories. Manapol Decl. ¶ 3.

## III. ARGUMENT

Rule 26(c) permits a protective order only "for good cause." Fed. R. Civ. P. 26(c)(1). "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1117–18 (N.D. Cal. 2024). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). And "[i]dle speculation does not satisfy Rule 26(c)'s good cause requirement." *Gray*, 133 F.R.D. at 40.

The Federal Rules do not provide for an automatic stay of discovery while a motion to dismiss is pending. *See id.* ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect."). Courts in this District have applied a two-part test: "First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Second, the court must determine whether the pending motion can be decided absent additional discovery." *Realtek*, 732 F. Supp. 3d at 1117–18 (cleaned up). The court takes a "preliminary peek" at the merits. *Id.* at 1118. "Discovery should proceed if either prong of the test is not met." *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). This Court has stayed discovery pending a motion to dismiss where it had dismissed every claim, leaving no operative complaint. *See Realtek*, 732 F. Supp. 3d at 1117–18; *Gaudet v. Metro. Life Ins. Co.*, No. 25-cv-00694-PCP, ECF No. 52 at 12 (N.D. Cal. Aug. 25, 2025) ("Because there is no longer an operative complaint pending before the Court, the Court grants MetLife's motion to stay discovery.").

The preliminary peek does not prejudge the motion. It only asks whether a stay would serve Rule 1's directive to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Ninth Circuit has approved a stay of discovery pending a motion to dismiss where the court "is convinced that the plaintiff will be unable to state a claim for relief." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981); *see Mlejnecky*, 2011 WL 489743, at *7. This Court has described the same approach for this motion: "[M]y thinking on the propriety of the [stay] is going to be related to my thinking about the merits of the claim . . . . [E]ven if I agree that the claim, as stated, fails, if I think there's a possibility or a likelihood that they could ultimately state a valid claim, I might deny the motion." Tr. 10:12–17.

Whether to stay discovery is within the Court's discretion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The Ninth Circuit has indicated, however, that a stay may be improper where the discovery sought bears on the very issue the pending motion presents. *See Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) (stay "would have been improper" had the discovery been relevant to subject-matter jurisdiction).

Under this framework, Anthropic's motion fails. A preliminary peek shows at least a real possibility that Plaintiffs can state a distribution claim, which under the Court's stated approach is reason enough to deny a stay. The motion would not dispose of the issue at which the discovery is directed, because that discovery is bound up with claims, issues, and defenses that will proceed regardless. And Anthropic has shown no concrete burden, while a stay would prejudice Plaintiffs.

### A. A preliminary peek shows at least a real possibility that Plaintiffs can state a distribution claim, and speculation that the theory will be dismissed is not good cause

Anthropic's motion presupposes that the distribution theory will be dismissed. Mot. at 1, 3–4. But the question is not whether the FAC as currently pleaded will survive; it is whether there is "a possibility or a likelihood that [Plaintiffs] could ultimately state a valid claim." Tr. 10:15–17. The answer to that question is yes, for four reasons.

*First*, the theory rests on Ninth Circuit law addressing the very protocol at issue: "[b]oth uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction." *Fung*, 710 F.3d at 1034. Anthropic

may call that statement dicta (Reply at 10) but, whatever its weight, it should foreclose any suggestion that an upload-based distribution claim is legally impossible in this Circuit. Indeed, Anthropic essentially admits that the viability of that claim will depend on the facts of the case—recipients, completed transfers, and the size of the pieces sent (MTD at 15–20)—which is precisely why discovery should proceed without delay so that the actual facts can be incorporated into the pleadings as necessary.

*Second*, and relatedly, Anthropic does not contend that any defect it identifies is incurable. It asks the Court to dismiss Count I only "to the extent" it rests on the distribution right, without asking that leave to amend be denied, even though its reply seeks dismissal "without leave to amend" as to another work. MTD at 20; Reply at 5, 15. The stay motion itself is built around amendment: it asks that any stay continue "until Anthropic answers the amended complaint." Mot. at 5. And the Court has explained that its practice is that it "almost always give[s] parties at least one more opportunity to amend." Tr. 11:24–12:1; *see* ECF No. 66 at 2 (Rule 15 requires that leave be "freely give[n]"). Where amendment is likely, a stay is not warranted. *See Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*, 2026 WL 104229, at *1 (N.D. Cal. Jan. 14, 2026) (movant "has not met its heavy burden of making a strong showing that a stay is warranted because amendment is unlikely to be futile").

*Third*, though it would not be necessary, Plaintiffs have already identified what an amended pleading would add if required: "the specific torrents and files from which Defendants acquired each work, the configuration and default upload behavior of Defendants' clients, and the piece length specified in the public torrent metadata." Opp. at 24. The deadline to amend is January 15, 2027. ECF No. 66 at 1. As explained in Part B.3 below, the remaining facts Anthropic faults Plaintiffs for omitting—which peers connected to Anthropic's clients and what those clients sent—are peculiarly within Anthropic's possession. A stay would withhold them during the very period in which Plaintiffs would be preparing that amendment.

*Fourth*, even if the Court agrees with Anthropic, Count I will survive—and Anthropic does not challenge the reproduction theory. MTD at 18. Count I is a single claim for direct infringement, and courts have declined to parse an adequately pleaded claim theory by theory at the pleading stage. *See Adjaye v. Cook*, 2024 WL 647636, at *4 (N.D. Cal. Feb. 15, 2024) ("Adjaye has stated a plausible Fourth Amendment claim. That is the end of the matter for present purposes. . . . [T]he Court declines to

consider whether a particular Fourth Amendment theory is deficient."); *see also Campbell v. District of Columbia*, 972 F. Supp. 2d 38, 46 n.5 (D.D.C. 2013) (plaintiff whose claim survived on one theory "may take discovery under both theories"). However the Court resolves that question, the claim—and the torrenting sessions on which it rests—will remain in the case.

Finally, Anthropic's prediction that distribution discovery will be "wasted" if its motion succeeds, Mot. at 1, could be made about any discovery that proceeds while a motion to dismiss is pending, and it is particularly unpersuasive here. Anthropic concedes that discovery on the reproduction claim "is underway," including discovery into "which works Anthropic downloaded over BitTorrent, when, and why." Mot. at 1, 5. And Anthropic is engaged in torrenting discovery in other cases arising from the same torrenting, including the Phase I torrenting discovery ordered in *Concord II* and *BMG*. *See* Part C, *infra*.

In short, Anthropic asks the Court to stay discovery based on nothing more than a possibility that the distribution theory will be dismissed and never successfully repleaded. That is simply not enough to justify the extraordinary (and potentially prejudicial) relief Anthropic seeks.

**B. The motion would not dispose of the issue at which the discovery is directed, because that discovery is inseparable from claims, issues, and defenses that will proceed regardless**

Anthropic's motion is not dispositive of the entire case, and the "issue at which discovery is directed" is not confined to the distribution theory. *Realtek*, 732 F. Supp. 3d at 1117–18. The torrenting discovery Anthropic seeks to stay bears directly on the reproduction claim that Anthropic concedes is adequately pleaded, on Count II, on willfulness and statutory damages, and on Anthropic's own defenses. It also goes to the very facts Anthropic faults Plaintiffs for not pleading.

**1. The stay rests only on a partial challenge to one count**

Anthropic does not seek a stay based on its release, standing, or limitations arguments; it agrees that reproduction discovery should continue. Mot. at 1, 5. The only ground offered for the stay is the distribution argument, which addresses one of the acts on which Count I rests. Anthropic concedes that the reproduction theory is adequately pleaded. MTD at 18. And Anthropic's challenge to the distribution theory rests on the absence of details—named recipients, completed transfers, and piece sizes—that, as explained below, are peculiarly within Anthropic's possession and control. A motion that would leave

the same sessions, records, and witnesses in the case does not justify walling off part of the evidence about them. *See Nazemian v. NVIDIA Corp.*, No. 4:24-cv-01454-JST, ECF No. 273 at 34:20–36:16 (N.D. Cal. Feb. 19, 2026) (oral ruling denying motion to stay discovery on claims challenged in a pending motion to dismiss because, among other things, "even if the Court were to dismiss the claims, dismissal is unlikely to be with prejudice and be dispositive of the entire claim").

**2. The discovery Anthropic seeks to stay reaches beyond the distribution theory**

Anthropic frames its request as a so-called "targeted" stay of discovery on "one theory." Mot. at 1, 4. But Anthropic defines that discovery by reference to *facts*, not theories: how Anthropic's BitTorrent clients were configured in June 2021 and July 2022, "network activity" during those sessions, and what those clients uploaded. Mot. at 4–5. And, as Anthropic knows, those facts are central to issues that will be litigated no matter how the Court rules on the motion to dismiss.

*First*, the reproduction claim. Anthropic concedes that discovery into "which works Anthropic downloaded over BitTorrent, when, and why" must proceed. Mot. at 5. But a BitTorrent client's configuration, session logs, and piece-exchange records <u>*are the primary evidence of what the client downloaded*</u>: which torrents were loaded, which files were selected, whether downloads completed and were reassembled into full copies, and whether works missing from Anthropic's Works List were nonetheless acquired. *See* FAC ¶¶ 242–44. The *Bartz* court recognized as much, explaining that whether a book "was in fact torrented exactly as expected can be easily checked by comparing the canonical MD5 hash values available in the LibGen book catalog against the computed MD5 hash values of the files as in fact torrented by Anthropic." *Bartz*, ECF No. 244 at 18:7–11. Anthropic's own motion to dismiss contrasts downloads that "resulted in complete reassembled copies" with uploads of mere "pieces." MTD at 19. Plaintiffs are entitled to test both halves of that premise, and the records that show what flowed in are the same records that show what flowed out.

*Second*, distribution-related evidence is relevant to willfulness and statutory damages**.** Plaintiffs allege willful infringement and seek enhanced statutory damages. FAC ¶¶ 241, 270, 272. Whether Anthropic knew its clients were serving pirated books to the public, and chose not to "disable, limit, or throttle" that uploading, *id.* ¶ 246, bears directly on Anthropic's state of mind in conducting the

torrenting sessions at issue. The "risk-mitigation strategies used to carry out the BitTorrent operations" that Amodei approved are also at issue. *Id.* ¶ 266.

*Third*, Count II and individual liability. Count II alleges that Plaintiffs' works were "unlawfully reproduced and distributed to the public via torrenting," and that Amodei and Mann knowingly induced and materially contributed to that torrenting, including by supplying "the direction, instructions, tooling, and know-how" used to carry it out. FAC ¶¶ 279, 281–84. Anthropic's distribution argument is directed to Count I, not Count II. MTD, Notice of Motion. Indeed, Anthropic argues that, without more detail about the protocol, uploading "sounds only in contributory infringement." MTD at 17; *see* Reply at 12. Regardless of how the Court resolves the distribution theory under Count I, Plaintiffs must prove what instructions, tooling, and configuration choices Mann and Amodei supplied for the torrenting and what the clients did as a result. That is the same evidence Anthropic would place off-limits.

*Fourth*, Anthropic's own defenses. Anthropic has put its uploading at issue in at least four ways. It argues that the *Bartz* release bars claims arising from "torrenting (including uploading and seeding)." MTD at 5. It argues that the distribution theory is not entitled to *American Pipe* tolling because a defendant reading the *Bartz* complaint "would have no reason to preserve evidence or marshal witnesses on the operation of a peer-to-peer client"—even though the *Bartz* parties deposed the individuals who torrented the datasets and exchanged expert topics on "torrenting, seeding, and leeching." MTD at 11; Opp. at 19–20. It contests Plaintiffs' allegations that Anthropic took "steps to hide the full extent" of its infringement and that "only Defendants control and possess the evidence of which works they copied and distributed." FAC ¶¶ 15, 236; MTD at 13–14. And it has disclosed that it may use, in support of its defenses, documents showing "the absence of any distribution . . . of the works identified by Plaintiffs." Manapol Decl. Ex. 1 at 16:4–5. What Anthropic knew about its uploading, what it investigated and preserved, and what it disclosed are relevant to each of those defenses. Anthropic cannot rely on the uploading record as a sword while asking the Court to shield that record from discovery.

Because the same sessions, machines, software, logs, and witnesses underlie all these issues, Anthropic's proposed line—"which works Anthropic downloaded over BitTorrent, when, and why" on one side, "whether, what, and to whom Anthropic's clients uploaded" on the other, Mot. at 5—cannot be

administered. Every request for client configuration files or session logs, and every question to Mann about how he ran the client, would invite a dispute over which side of the line it falls on.

The line would also be porous: the motion is Anthropic's alone, and it does not purport to reach discovery from Mann or Amodei, who are also named in Count I. Limiting discovery to one side of so fine a line "would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery." *Gray*, 133 F.R.D. at 41.

A stay that multiplies disputes does not advance "the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1; it frustrates it. This motion should thus be denied.

**3. Anthropic should not be permitted to fault Plaintiffs for omitting facts peculiarly within its possession while blocking discovery of those facts**

The stay should also be denied because the "deficiencies" Anthropic identifies in the distribution theory concern facts peculiarly within Anthropic's possession, and Plaintiffs' ability to plead and prove them depends on the discovery Anthropic seeks to stay. *See Seven Springs Ltd. P'ship v. Fox Cap. Mgmt. Corp.*, 2007 WL 1146607, at *4 (E.D. Cal. Apr. 18, 2007) (denying stay where adjudicating the issue in the pending motion "may well require discovery into the facts pertinent to" that issue).

Plaintiffs were not present for Anthropic's torrenting sessions and cannot know which peers connected to Anthropic's clients or what pieces were transmitted to them; that information resides in Anthropic's client logs, configuration files, and network records. *See* FAC ¶ 236 ("only Defendants control and possess the evidence of which works they copied and distributed"). The Ninth Circuit permits pleading on information and belief "where the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). It makes little sense to stay discovery of precisely that information on the strength of a motion that faults Plaintiffs for not already having it. Even in *Realtek*, where the Court dismissed every claim, it allowed the plaintiff to "seek relief from th[e] stay upon a particularized showing that specific proposed discovery is necessary for it to prepare its amended complaint." 732 F. Supp. 3d at 1118.

Anthropic therefore fails the first prong of the test.

Nor does Anthropic's showing on the second prong—whether the motion can be decided without additional discovery—help it. Whether the Court can decide the motion without discovery is beside the point when the motion would not dispose of the issue at which the discovery is directed and the discovery is needed for claims and defenses that will proceed regardless. In any event, Anthropic overstates the point. Its release and standing arguments rely on a declaration of counsel and settlement-administrator records that Plaintiffs have disputed with sworn declarations. Opp. at 6–8, 10–12. And the FAC allegation Anthropic quotes—that "no discovery is required to identify the acts of infringement alleged herein," Mot. at 4 (quoting FAC ¶ 245)—goes on to say that those acts "are documented in Anthropic's own internal records and in sworn testimony made public in *Bartz*." FAC ¶ 245. That allegation describes where the evidence is; it does not concede that the evidence is unnecessary, and it confirms that the evidence can be produced without the "forensic reconstruction" Anthropic predicts.

**C. Anthropic has not shown any concrete burden, and a stay would prejudice Plaintiffs**

Even if the motion to dismiss is granted with leave to amend, discovery conducted in the meantime will have advanced the efficient disposition of this case, which is the goal of Rule 1. On the other hand, Anthropic offers no concrete, non-speculative reason to carve one category of evidence out of discovery the Court has already opened. *See* Tr. 7:20–22.

Every litigant is burdened by discovery; the question is whether Anthropic has made a specific, factual showing that this discovery would impose an undue burden. *See Gray*, 133 F.R.D. at 40. It has not even tried. The motion attaches no declaration and quantifies nothing. It offers only generalized descriptions of the discovery's "scope" and technical character. Mot. at 4–5. Such "[b]road allegations of harm, unsubstantiated by specific examples," cannot establish good cause. *Beckman*, 966 F.2d at 476.

Nor can Anthropic show, on this record, that the burden or expense of the discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Indeed, as noted above, granting the proposed stay would only increase burden and inefficiency as it invites disputes over what discovery is solely related to the distribution theory (given the overlap of issues explained above).

Anthropic's burden arguments are also contradicted by the record. Anthropic predicts a "forensic reconstruction" of 2021 and 2022 client configurations and network activity. Mot. at 1, 4. But Anthropic has already litigated these very sessions, and it is litigating them now:

*Bartz*. As the class plaintiffs reported, the parties deposed the individuals who performed the torrenting, exchanged trial expert topics on "torrenting, seeding, and leeching," and the class plaintiffs subpoenaed third parties, including "Anna's Archive (creator of PiLiMi)." *Bartz*, ECF No. 619 at 3–4 (ECF No. 56-6). Producing records and testimony that Anthropic has already collected, reviewed, and exchanged in another case is not a "vast technical investigation."

*Concord II* and *BMG*. There, Judge Lee ordered phased discovery in which the torrenting claims go first, and the parties' joint statement provides that Phase I "fact discovery shall proceed with respect to Plaintiffs' claims regarding Defendants' direct infringement and/or contributory infringement by torrenting." *Concord II*, ECF No. 133 at 2:10–13, 13:24–26; *see Concord II*, ECF No. 117. The *Concord II* torrenting claim includes the "distribution of Works in Suit via torrenting," which Anthropic has not moved to dismiss. *Concord II*, ECF No. 103 at 4:12–16. Anthropic does not explain why discovery that is proceeding on alleged torrenting-based distribution in those cases becomes unduly burdensome here.

*Chicken Soup*. The only decision Anthropic cites on the burden of torrenting discovery is a magistrate judge's order denying a motion to compel against Anthropic and OpenAI as *nonparties* in a case against Meta. *Chicken Soup for the Soul, LLC v. Meta Platforms Inc.*, No. 26-cv-02333-VC (TSH), 2026 WL 2668437, at *4–6 (N.D. Cal. Sept. 10, 2026); *see* Mot. at 4–5. The court there held principally that how a different company used torrent clients had little relevance to Meta's fair-use defense—"singling out OpenAI to see how it used torrent clients . . . has a sort of random quality to it." *Id.* at *4. The "vast technical investigation" language Anthropic quotes addressed the subpoena to OpenAI, *id.* at *5; as to Anthropic, the court said only that the dispute was "the same" and so was "the Court's ruling," *id.* at *6. Here, Anthropic is a party, and its own torrenting is the conduct at issue. Rule 45's protections for nonparties say nothing about a party's obligation to produce its own records.

Anthropic's concern for "nonparty BitTorrent users," Mot. at 1, 4–5, is likewise speculative. No subpoena to any BitTorrent user has been served. The most direct evidence of what Anthropic's clients uploaded is in Anthropic's own client logs, configuration files, and network records. If third-party discovery is ever sought, Rule 45 protects nonparties, and the Court can address any such subpoena if and when it is served. A hypothetical future subpoena is no reason to stay party discovery now.

Ultimately, if Anthropic's positions on the merits are as strong as it contends, responding to this discovery sooner rather than later would benefit Anthropic, because prompt disclosure of the evidence supporting its position would further the efficient resolution of this case. Proceeding with discovery will not unfairly prejudice Anthropic.

Meanwhile, a stay would prejudice Plaintiffs. The torrenting occurred more than four years ago. Anthropic's assurance that its "preservation obligations remain in place," Mot. at 1, 5, is cold comfort given its position that a defendant in its shoes "would have no reason to preserve evidence . . . on the operation of a peer-to-peer client," MTD at 11, and given that the *Bartz* settlement required Anthropic to "destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror" within thirty days of final judgment, subject to its "existing legal preservation obligation[s]." *Bartz*, ECF No. 362-3 § 2.2; *see Bartz*, ECF No. 680 at 17. Plaintiffs are entitled to learn promptly what has and has not been preserved, including any relevant records held by third parties such as cloud-service providers, rather than discovering gaps months from now. The stay would also run through the period in which Plaintiffs must decide whether to amend, which closes January 15, 2027. ECF No. 66 at 1. And the stay Anthropic proposes would extend beyond the Court's ruling "until Anthropic answers the amended complaint," Mot. at 5, an event whose timing Anthropic controls and that further motion practice could postpone. Unlike in *Realtek*, where every claim had been dismissed, the reproduction claim here will proceed regardless, so the parties will be conducting torrenting discovery throughout that period anyway. *See* 732 F. Supp. 3d at 1118.

**D. If the Court enters any stay, it should be narrow**

If the Court concludes that some deferral is warranted, it should be limited to what Anthropic actually identifies as burdensome—discovery from nonparty BitTorrent users about what they received—and should not reach Anthropic's own records of its clients' configuration, settings, logs, and network activity during the acquisition sessions, or testimony about them, all of which also bear on the claims and defenses that will proceed regardless. Any stay should end when the Court rules on the motion to dismiss rather than when Anthropic answers an amended pleading, and, as in *Realtek*, it should permit Plaintiffs to seek relief "upon a particularized showing that specific proposed discovery is necessary for [them] to prepare [an] amended complaint." 732 F. Supp. 3d at 1118.

*        *        *

Anthropic has not established good cause for a stay of discovery that is inseparable from discovery that will proceed regardless. Because Anthropic fails both prongs of the test, and because a preliminary peek shows at least a real possibility that Plaintiffs can state a distribution claim, the motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Anthropic's motion to stay discovery. In the alternative, any stay should be limited as described in Part III.D.

Dated: November 2, 2026                    Respectfully submitted,

**DONIGER / BURROUGHS**

By: /s/ Stephen M. Doniger
Stephen M. Doniger (SBN 179314)
Benjamin F. Tookey (SBN 330508)
Nelson A. Campbell (SBN 357579)
Andres Navarro (SBN 358499)
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
anavarro@donigerlawfirm.com
ncampbell@donigerlawfirm.com

**JAMES H. BARTOLOMEI, III P.A.**
James H. Bartolomei III
james@duncanfirm.com
Michael Manapol
michael@manapollaw.com
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600

**GAFNI & LEVIN, LLP**
Adam I. Gafni, Esq. (SBN: 230045)
11811 San Vicente Blvd.

Los Angeles, California 90049
Telephone: 424.744.8344
adam@gafnilaw.com

*Attorneys for Plaintiffs*