**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS WILLIAM SHAKESPEARE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, ET AL.,<br><br>Defendants. | Case No. 5:26-cv-5931-PCP<br><br>**DEFENDANT ANTHROPIC PBC'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS**<br><br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Motion Would Dispose of the Distribution Theory Without Discovery. .......... 2

1. The volition question turns on the FAC alone. .......... 2

2. The possibility of amendment does not defeat a stay. .......... 3

B. Distribution Can Be Decided, and Its Discovery Stayed, Independently of Reproduction. .......... 4

C. The Stay Anthropic Seeks Is Narrow, Workable, and Fair. .......... 5

1. None of Plaintiffs' objections requires distribution discovery. .......... 5

2. The stay avoids a concrete burden without prejudicing Plaintiffs. .......... 7

III. CONCLUSION .......... 8

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .......... 6

*Adjaye v. Cook*, No. 23-cv-1234-AGT, 2024 WL 647636 (N.D. Cal. Feb. 15, 2024) .......... 4

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) .......... 7

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D. Cal. 1990) .......... 5, 6, 7

*Heck v. Amazon.com, Inc.*, No. 22-cv-3986-JSW, 2022 WL 16579372 (N.D. Cal. Nov. 1, 2022) .......... 4

*In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-2185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) .......... 4

*Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025) .......... 5

*Pereda v. Gen. Motors LLC*, No. 21-cv-6338-JST, 2022 WL 19692037 (N.D. Cal. Mar. 15, 2022) .......... 7

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) .......... 4

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101 (N.D. Cal. 2024) .......... 2, 4, 7, 8

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) .......... 7

*Staley v. Gilead Scis., Inc.*, No. 19-cv-2573-EMC, 2020 WL 5507555 (N.D. Cal. July 29, 2020) .......... 4, 5

### FEDERAL STATUTES

17 U.S.C. §§ 106, 501(b) .......... 4

17 U.S.C. § 504(c)(1) .......... 6

### FEDERAL RULES

Fed. R. Civ. P. 26 .......... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Anthropic seeks a narrow stay of discovery directed solely to Plaintiffs' theory that Anthropic's BitTorrent clients infringed the distribution right by uploading pieces of Plaintiffs' works to third-party BitTorrent users. Contrary to Plaintiffs' characterizations, reproduction discovery, including what Anthropic downloaded, when, and why, would proceed in full. Anthropic would not withhold discovery that is otherwise responsive to Plaintiffs' reproduction claim, even if it also reflects uploading. Deferring distribution discovery would cost Plaintiffs little, while pursuing it now would impose a substantial burden that would be wasted if the distribution theory is dismissed. Plaintiffs' three objections fail.

*First*, Anthropic's motion to dismiss identifies three independent defects in the distribution theory: the FAC alleges no actual dissemination, no volitional conduct by Anthropic, and no upload of more than de minimis pieces of any work. MTD 15. Plaintiffs argue that the first and third defects turn on facts that require discovery, such as recipients, completed transfers, and piece sizes. Opp. 6, 10. Even if that were so, they do not argue, and could not, that discovery bears on the second. The FAC attributes any uploading to the BitTorrent protocol's automatic response to other users' requests, and no discovery about what was sent, or to whom, can show that Anthropic chose to distribute anything. Plaintiffs' proposed amendment merely adds more facts of the same kind, describing what the software could do rather than any choice Anthropic made. Neither that amendment nor the Court's practice of allowing one amendment can cure that legal defect. Because volition alone disposes of the distribution theory, the Court can grant the stay without resolving Plaintiffs' factual disputes about any other defect.

*Second*, Plaintiffs argue that the distribution theory cannot be separated from the rest of the case, either in the pleadings or in discovery. Opp. 6–10. Plaintiffs did not make the pleading argument in opposing the motion to dismiss, and the Ninth Circuit has upheld the pleading-stage dismissal of a distribution theory for lack of volitional conduct while a reproduction theory went forward. Discovery into reproduction and distribution is distinct. Reproduction discovery asks which works Anthropic took in, when, and why, and comes largely from Anthropic's own records

and witnesses. Distribution discovery asks what left Anthropic's clients and where it went. Answering that would require tracing outbound pieces work by work, reconstructing network activity from 2021 and 2022, and subpoenaing unidentified BitTorrent users.

*Third*, Plaintiffs argue that Anthropic has shown no burden and that a stay would prejudice them. Opp. 11–13. But courts in this District, including this Court, have granted stays without itemized cost estimates. The burden here is apparent from Plaintiffs' requested discovery: reconstructing outbound transfers across 875 works and seeking discovery from unidentified recipients. That requires an extensive work-by-work factual and forensic investigation to defend claims that may not even survive a pleadings challenge. Plaintiffs, by contrast, lose little by waiting, because the stay lasts only until the pleadings settle and Anthropic's preservation obligations remain in place.

## II. ARGUMENT

Courts in this District apply a two-part test to discovery stays pending a motion to dismiss. First, the pending motion must be "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." Second, the motion must be one that "can be decided absent additional discovery." Under that test, the court takes a "preliminary peek" at the merits. *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1117–18 (N.D. Cal. 2024) (cleaned up). Plaintiffs apply the same test. Opp. 4.

### A. The Motion Would Dispose of the Distribution Theory Without Discovery.

#### 1. The volition question turns on the FAC alone.

Plaintiffs' distribution theory fails because the FAC attributes any upload to the automatic functionality of the BitTorrent protocol and the actions of third-party BitTorrent users, not to a volitional act by Anthropic. MTD 17–18. Plaintiffs' distribution theory fails under the volitional-conduct requirement, and Plaintiffs do not respond to this argument in opposing the stay. *See* Opp. 5–7.

Anthropic's motion to dismiss explains why those allegations defeat volition as a matter of law. A defendant does not cause a transmission that software makes automatically at another user's request, and courts have resolved that question on the pleadings. MTD 17–18; MTD Reply 12–13.

Plaintiffs' requested discovery would not establish volition. They say the distribution theory depends on "recipients, completed transfers, and the size of the pieces sent" and on "which peers connected to Anthropic's clients" and "what pieces were transmitted to them." Opp. 6, 10. That discovery could show whether uploads occurred and how much was sent, but not that Anthropic caused them under the applicable proximate-cause standard.

Plaintiffs' proposed amendment would not cure the defect either. It would add allegations about the torrents and files, the clients' configuration and "default upload behavior," and piece length. Opp. 6 (quoting MTD Opp. 24). As Anthropic explained, none of that identifies a choice by Anthropic to send any work to anyone. MTD Reply 13–15. Whatever facts Plaintiffs add or discovery they obtain, their theory still fails on this ground.

Plaintiffs' reliance on *Fung* repeats an argument Anthropic answered in its motion to dismiss. Opp. 5–6; MTD Reply 10. *Fung* did not address whether a downloader engages in volitional conduct when its software uploads automatically at another's request. *Id.* Neither *Fung* nor the proposed amendment supplies the volitional conduct the FAC lacks.

The second prong is therefore satisfied: the distribution argument can be decided without discovery. Plaintiffs note that Anthropic's release and standing arguments rely on declarations. Opp. 11. But the requested stay rests only on the distribution argument, which turns on the FAC alone.

**2. The possibility of amendment does not defeat a stay.**

Plaintiffs say Anthropic "does not contend that any defect it identifies is incurable." Opp. 6. That is not true. Anthropic's reply argued that Plaintiffs' proposed amendment "would not cure the defects" in the distribution theory. MTD Reply 4–5, 10, 13–15. Plaintiffs also rely on the Court's practice of allowing "at least one more opportunity to amend." Opp. 6 (quoting Tr. 11:24–12:1). That practice gives another opportunity to amend. It does not suggest that the amendment would survive a motion to dismiss, which is the question the Court said would guide this motion. Tr. 10:12–20 (explaining that if "it's likely that there's no possibility" Plaintiffs can state a valid claim, the Court "will probably grant" the stay). The Court also said that it "might deny the motion" if it saw "a possibility or a likelihood that they could ultimately state a valid claim." *Id.* There is

none here. Neither the proposed amendment nor the requested discovery identifies a choice by Anthropic to send anything to anyone.

This Court's decision in *Realtek* answers that question. The Court stayed discovery through the answer to any amended complaint because "it is possible that Realtek may not be able to [state a valid claim] in any amended complaint," without requiring certainty that amendment would fail. 732 F. Supp. 3d at 1118. Although *Realtek* involved dismissal of every claim, Opp. 4, 13, the first prong requires only that the motion be dispositive "at least . . . on the issue at which discovery is directed." *Realtek,* 732 F. Supp. 3d at 1117–18. Other courts in this District have reached the same conclusion. *See Heck v. Amazon.com, Inc.*, No. 22-cv-3986-JSW, 2022 WL 16579372, at *2 (N.D. Cal. Nov. 1, 2022) (possibility of cure "with leave to amend is not germane to the question before the Court on a motion to stay discovery"); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-2185-BLF, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (staying discovery because claims "could prove difficult for Plaintiffs to overcome, even with leave to amend freely given").

**B. Distribution Can Be Decided, and Its Discovery Stayed, Independently of Reproduction.**

Plaintiffs next argue for the first time that the distribution theory cannot be separated from the reproduction claim because both are pleaded in Count I. Opp. 6–7 (citing *Adjaye v. Cook*, No. 23-cv-1234-AGT, 2024 WL 647636, at *4 (N.D. Cal. Feb. 15, 2024)). In opposing the motion to dismiss, they defended distribution only on its merits. MTD Opp. 21–24. A stay opposition is not the place to supplement completed briefing.

In any event, *Adjaye* addressed Fourth Amendment theories, not the Copyright Act's distinct exclusive rights. 2024 WL 647636, at *3–4. The Act authorizes suit "for any infringement of that particular right." 17 U.S.C. §§ 106, 501(b). Plaintiffs relied on the same principle in opposing dismissal, arguing that each owner may sue for "any infringement of that particular right." MTD Opp. 9. Courts have accordingly dismissed a theory based on one exclusive right while allowing theories based on others to proceed. The Ninth Circuit, for example, affirmed the pleading-stage dismissal of distribution and display theories for lack of volitional conduct while a reproduction theory in the same claim proceeded. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657,

667–69, 678 (9th Cir. 2017); *see also Staley v. Gilead Scis., Inc.*, No. 19-cv-2573-EMC, 2020 WL 5507555, at *11 (N.D. Cal. July 29, 2020) (rejecting argument that challenging one liability theory within a count was improper, because "[o]ften, a plaintiff asserts a single cause of action that is predicated on more than one liability theory, and a court eliminates one theory through a motion to dismiss").

The FAC likewise pleads reproduction and distribution as separate "specific, identified acts." FAC ¶ 245(a)–(d). Courts in this District also treat BitTorrent distribution separately. *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1043 n.4 (N.D. Cal. 2025) ("[R]eproduction and distribution are separate rights that must be considered separately."). Resolving the distribution theory first benefits both sides by determining its viability before, rather than after, months of forensic work.

### C. The Stay Anthropic Seeks Is Narrow, Workable, and Fair.

#### 1. None of Plaintiffs' objections requires distribution discovery.

Plaintiffs argue that the stay is not "targeted" because it defines deferred discovery "by reference to facts, not theories," and that those facts also bear on reproduction, willfulness, Count II, and Anthropic's defenses. Opp. 1, 8–9. None of the four justifies distribution discovery before the Court decides whether the distribution theory survives.

*First*, reproduction and distribution discovery can be separated. Plaintiffs argue that the distinction "cannot be administered." Opp. 9–10. But the stay follows the FAC's own distinction between incoming and outgoing pieces. FAC ¶ 245(b)–(c).

Reproduction discovery would continue in full, including which works Anthropic downloaded, when, and why, to the extent the records show those facts. Mot. 5. Only discovery directed to uploads would be deferred: whether Anthropic's clients uploaded, what they uploaded, and to whom; per-work tracing of outbound pieces; reconstruction of torrenting activity; and discovery from other BitTorrent users. Mot. 4–5. The two also draw on different sources. Reproduction discovery comes largely from Anthropic's own records and witnesses, while distribution discovery would require forensic reconstruction and subpoenas to nonparties.

Ordinary relevance rules would resolve any edge cases, as in any case involving multiple

claims. *Gray* does not support Plaintiffs' contrary position. The "closely linked issues" there were class-certification and merits discovery, which "cannot be meaningfully developed without inquiry into basic issues of the litigation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40–41 (N.D. Cal. 1990); *see* Opp. 10. Distribution discovery is different. It asks what happened to pieces after they left Anthropic's clients, including whether any third party actually received them and assembled a complete copy. None of that requires inquiry into the basic issues of the reproduction claim, which turns on what Anthropic downloaded and kept.

*Second*, willfulness does not require distribution discovery. Plaintiffs say Anthropic's knowledge that its clients uploaded bears on its state of mind during the torrenting sessions. Opp. 8–9. But willfulness attaches to the infringing act. For the reproduction claim, the question is what Anthropic knew and intended, including why it chose to torrent, what it understood about the sources, and who approved the decision. Discovery on those issues remains open. Mot. 5. What Anthropic knew about uploading goes only to willful distribution, and statutory damages reach only "infringements involved in the action." 17 U.S.C. § 504(c)(1).

*Third*, Count II rises or falls with the distribution theory. Count II alleges that Amodei and Mann contributed to the same distribution. FAC ¶ 279. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). Discovery directed to that theory should therefore await the same ruling.

*Fourth*, Anthropic's defenses do not depend on upload evidence. Plaintiffs argue that upload evidence bears on those defenses and so must be produced now. Opp. 8–9. But Anthropic does not seek to defer discovery on release, limitations, or fair use. The release of the eight works turns on the Works List and opt-out records. MTD Reply 1–2. Tolling turns on the *Bartz* complaint. *Id.* at 7–8. To the extent the release and tolling arguments address distribution, they become moot if that theory is dismissed.

Nor do Anthropic's initial disclosures put uploading at issue. Rule 26(a)(1) required Anthropic to identify documents it "may use to support its claims or defenses" against the complaint as pleaded, before a ruling on the motion to dismiss. Fed. R. Civ. P. 26(a)(1)(A)(ii). Because the

FAC pleads distribution, Anthropic's disclosures account for it, including documents showing "the absence of any distribution or output of the works." Opp. 9 (quoting Manapol Decl. Ex. 1 at 16:4–5). Identifying evidence to defend a pleaded theory does not establish its viability or make upload records relevant to other issues. During the stay, Anthropic will not rely on the type of evidence for which it asks the Court to defer discovery on.

**2. The stay avoids a concrete burden without prejudicing Plaintiffs.**

Plaintiffs argue that Anthropic has shown no concrete burden because it submitted no declaration. Opp. 4, 11. But a narrow stay requires no declaration, and courts in this District, including this Court, have granted stays without one. *Realtek*, 732 F. Supp. 3d at 1117–18 (finding good cause because "the burdens of discovery in antitrust lawsuits can be substantial"); *Pereda v. Gen. Motors LLC*, No. 21-cv-6338-JST, 2022 WL 19692037, at *2 (N.D. Cal. Mar. 15, 2022) (relying on the movant's description of discovery in granting a stay).

Neither case Plaintiffs cite holds otherwise. *Beckman* addressed whether deposition transcripts already produced could remain confidential after settlement; the claimed harm depended on facts only the party seeking protection could supply. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992). Here, the burden follows from the discovery Plaintiffs themselves describe, not from facts known only to Anthropic. *Gray* denied a stay because the defendants offered only "conclusory" predictions about motions to dismiss, "some of which [were] yet to be filed." *Gray*, 133 F.R.D. at 40. The problem in *Gray* was the weakness of the pending motions, not the absence of evidence quantifying discovery costs. Anthropic's motion to dismiss, by contrast, is fully briefed and identifies a specific legal defect. As the Ninth Circuit has explained, "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

Plaintiffs' own description shows the burden. They seek "client configurations, session logs, network records, and the testimony of the people who ran the clients," information about which peers connected and what pieces were transmitted across 875 works, and records "held by third parties such as cloud-service providers." Opp. 1, 10, 13. The FAC alleges sharing

"simultaneously with thousands of other users" but identifies no recipient. FAC ¶ 189. Tracing what went to whom would therefore require reconstructing network activity from four and five years ago and seeking discovery from unidentified recipients.

Plaintiffs say the same work is already underway in other cases. Opp. 11–12. But discovery elsewhere does not reduce the burden here, because the other cases involve different claims or different works. *Bartz* asserted no distribution claim. MTD Reply 7. And the torrenting claims in *Concord II* and *BMG* concern "the Works in Suit implicated by" those claims, which are musical compositions in songbooks, not the 875 books here. *Concord II*, ECF No. 133 at 13; *Concord II*, ECF No. 93 ¶ 78. Tracing which pieces of these 875 works went out, and to whom, is specific to this case, and that tracing is the burden the stay avoids.

Plaintiffs predict that a stay would risk evidence loss and delay amendment. Opp. 13. But the stay would run only from December 17 until the pleadings settle, the same period this Court used in *Realtek*. Mot. 5; *Realtek*, 732 F. Supp. 3d at 1111, 1117–18 & n.10. Anthropic's preservation obligations remain in place, and the *Bartz* file-destruction provision is itself subject to "existing legal preservation obligation[s]." Opp. 13. As for the January 15 amendment deadline, the Court anticipated that its ruling may issue in 2027 and that any amendment would follow it. Tr. 12:16–22.

Finally, Plaintiffs propose limiting any stay to discovery from nonparty BitTorrent users, excluding Anthropic's client records and related testimony, and ending it at the Court's ruling rather than Anthropic's answer to an amended complaint. Opp. 13. That alternative would leave in place the forensic reconstruction of what Anthropic's clients sent, work by work, to identify nonparty recipients in the first place. Mot. 4. Ending the stay at the ruling would restart that work while any amended distribution theory remains unpleaded. That is why this Court in *Realtek* kept the stay in place through the answer to any amended complaint. 732 F. Supp. 3d at 1117–18 & n.10.

## III. <u>CONCLUSION</u>

The Court should stay discovery directed to Plaintiffs' theory that Anthropic infringed the distribution right by uploading pieces of their works over BitTorrent until the motion to dismiss is resolved and, if the Court grants leave to amend, until Anthropic answers the amended complaint.

Dated: November 9, 2026

WHITE & CASE LLP

By: _/s/ Yar R. Chaikovsky_
Yar R. Chaikovsky

Mark Davies
Andy LeGolvan
Amir Jabbari

*Attorneys for Defendant Anthropic PBC*